[No. S043156. July 27, 1995.]

RICHARD CALDWELL, Plaintiff and Appellant, v.
JOSEPH MONTOYA et al., Defendants and Respondents.

**COUNSEL**

Gronemeier & Barker, Dale Gronemeier, Ellen R. Hurley and Alexander A. Molina for Plaintiff and Appellant.

Joseph Posner as Amicus Curiae on behalf of Plaintiff and Appellant.

Kohrs & Fiske, Conrad Kohrs and Michelle R. Williams for Defendants and Respondents.

Liebman, Reiner, Nachison & Walsh, Dennis J. Walsh and Mia D. Farber as Amici Curiae on behalf of Defendants and Respondents.

**OPINION**

**BAXTER, J.**—In this case, we confront a narrow but important issue: are individual members of an elected school board immune from a suit seeking damages against them personally for their successful votes to terminate the employment of the school district's superintendent, even when the complaint

alleges race and age discrimination in violation of California's Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.)?[1]

We conclude as follows: the Tort Claims Act (§ 810 et seq. (hereafter sometimes the Act))[2] generally affords a public employee personal immunity from suit when the act or omission for which recovery is sought resulted from "the exercise of the discretion vested in him." (§ 820.2.) This "discretionary act" immunity extends to "basic" governmental policy decisions entrusted to broad official judgment. The decision of an elected school board whether to replace the school district's highest appointed official is such a determination. The board's free, open, and candid consideration of an issue of this magnitude should not be subject to judicial interference by means of lawsuits seeking to hold individual board members accountable for their motives. As a matter of law, participating board members therefore enjoy personal immunity under section 820.2. This immunity applies even where the dismissed official alleges that the members' votes were cast for reasons that violated FEHA. Because the Court of Appeal reached a contrary result, its judgment must be reversed.

## FACTS

In September 1992, plaintiff Richard Caldwell sued the Paramount Unified School District (PUSD) and individual defendants Joseph Montoya III, Vivian Hansen, and Janet Miller. Plaintiff's second amended complaint, at issue here, alleged as follows:

In August 1991, plaintiff, then 66 years old, was serving as superintendent of PUSD under a contract effective through June 30, 1992. On August 13, 1991, the board of education of PUSD (Board) voted, by three to two, that plaintiff's contract not be renewed. Defendants Montoya, Hansen, and Miller, as members of the Board, cast the three deciding votes. Montoya's "motivation" was that plaintiff is not Hispanic or Latino. Miller and Hansen were "motivat[ed]" by plaintiff's age. Hansen had a further motive to retaliate for public positions taken by plaintiff's wife as a member of the Paramount City Council. Plaintiff obtained this information from newspaper reports of "statements and actions by the individual defendants which indicated or suggested that they had acted from impermissible motives." As a result of the Board's action, plaintiff's employment was terminated effective July 1, 1992.

---

[1] In addition to the parties' briefs, amicus curiae briefs addressing the issue have been filed on behalf of plaintiff by the California Employment Lawyers Association (Association), and on behalf of defendants by the Education Legal Alliance of the California School Board Association (Alliance).

[2] All further statutory references are to the Government Code unless otherwise indicated.

The complaint stated causes of action against PUSD for breach of contract, for violation of FEHA, and for retaliatory discharge in violation of public policy. The three individual defendants were included in the FEHA claims, Montoya for race discrimination (§ 12940, subd. (a)), Miller and Hansen for age discrimination (§ 12941, subd. (a)). Hansen was also included in the public-policy claim. The complaint sought compensatory and punitive damages against all defendants.

The individual defendants demurred, claiming discretionary act immunity under section 820.2. The trial court agreed, sustained the demurrer, and entered judgment dismissing the individual defendants from the action.

The Court of Appeal, Second District, Division Five, reversed in a sharply divided decision. Justice Armstrong concluded that the face of plaintiff's complaint does not establish defendants' claim of personal immunity for discretionary acts, because such immunity turns on the factual question whether defendants' challenged conduct involved conscious consideration of risks and benefits. (Citing *Johnson* v. *State of California* (1968) 69 Cal.2d 782, 794-795, fn. 8 [73 Cal.Rptr. 240, 447 P.2d 352].)

Moreover, Justice Armstrong determined, the individual defendants are not entitled to immunity under another provision of the Tort Claims Act, section 820.9. Section 820.9 provides personal immunity to certain executive and legislative officials of local public entities, including school board members, against suits seeking to impose vicarious liability for an "act or omission of the . . . entity," but the statute expressly declines to afford immunity for "that individual's own wrongful conduct." The instant complaint, Justice Armstrong concluded, is based not on vicarious or imputed liability, but on personal wrongs directly committed by the individual defendants.

Presiding Justice Turner concurred in Justice Armstrong's analysis but wrote a lengthy separate opinion urging an additional ground for reversing the judgment of dismissal. As a matter of law, the concurring opinion asserted, section 820.2 can never provide immunity against FEHA claims. Justice Turner reasoned as follows: section 820.2 accords immunity for discretionary acts "[e]xcept as otherwise provided by statute." FEHA is such a statutory exception, because the "employer[s]" covered by FEHA include public agencies such as school districts, and individuals who cause or assist a covered "employer" to commit employment practices forbidden by FEHA are personally liable under the statute, either as "agents" or as "aiders and abetters." Therefore, by the express terms of section 820.2, whenever FEHA makes a public employee individually liable, that liability prevails over the immunity for discretionary acts.

Justice Godoy Perez dissented, relying primarily upon section 820.9's "vicarious immunity" for members of local governing boards. As the dissent noted, section 820.9, unlike section 820.2, does not qualify its immunity with the phrase "except as otherwise provided by statute."

The dissent argued that the entity responsible for terminating plaintiff's employment was PUSD itself, and that any liability sought to be imposed on individual members of the Board is thus derivative and vicarious. In the dissent's view, the fact that PUSD was legally required to act through the collective votes of the Board members does not mean that those votes, cast in an official capacity and individually meaningless, were personal wrongs for which section 820.9 withholds immunity.

We granted review. Contrary to the Court of Appeal majority, we conclude as a matter of law that section 820.2 affords discretionary act immunity to the individual Board members against both the common law and FEHA causes of action stated in plaintiff's complaint.[3]

---

[3]In proceeding directly to the immunity issue, we depart from the general principle that the application of governmental-immunity statutes should not be considered until it has been determined that the agency or official sued owes a "duty" which would otherwise be actionable in tort. (E.g., *Williams* v. *State of California* (1983) 34 Cal.3d 18, 22 [192 Cal.Rptr. 233, 664 P.2d 137]; *Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 201-202 [185 Cal.Rptr. 252, 649 P.2d 894].) Despite the analytical purity of this "duty before immunity" doctrine, we have candidly acknowledged an exception for expediency and judicial economy. (*Kisbey* v. *State of California* (1984) 36 Cal.3d 415, 418 [204 Cal.Rptr. 428, 682 P.2d 1093].) For reasons explained in this footnote, we deem it prudent to apply that exception here.

Aside from the retaliation charge against defendant Hansen, plaintiff's claims against the individual defendants are based on FEHA. Insofar as pertinent here, FEHA makes it an "unlawful employment practice" for any covered "employer," specifically including "the state or any political or civil subdivision thereof," to refuse to hire, or to discharge from employment, any person on grounds, among others, of race, color, national origin, ancestry, or age over 40. (§§ 12926, subd. (d), 12940, subd. (a), 12941, subd. (a).) There is no doubt that aggrieved persons may, after exhausting their administrative remedies, sue under the statute for civil damages. (§ 12965, subd. (b); *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 214-221 [185 Cal.Rptr. 270, 649 P.2d 912].) Moreover, FEHA provides that an "employer" includes "any person acting as [the employer's] . . . agent" (§ 12926, subd. (d)) and makes it a violation for "any person" to aid or abet an act forbidden by the statute (§ 12940, subd. (g)). A number of FEHA cases, both in this court and in the Court of Appeal, and from both the public and private sectors, have involved individual defendants, with no argument made that they could not be personally liable. (E.g., *Cassista* v. *Community Foods, Inc.* (1993) 5 Cal.4th 1050, 1054 [22 Cal.Rptr.2d 287, 856 P.2d 1143]; *Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 252-254 [284 Cal.Rptr. 718, 814 P.2d 704]; *Valdez* v. *City of Los Angeles* (1991) 231 Cal.App.3d 1043, 1060-1061 [282 Cal.Rptr. 726]; *Roberts* v. *Ford Aerospace & Communications Corp.* (1990) 224 Cal.App.3d 793, 796, 800 [274 Cal.Rptr. 139].) However, no prior published California decision has directly considered whether FEHA imposes personal liability on an individual employee or manager who causes or assists a covered "employer" to violate the statute's prohibitions against discriminatory hiring, firing, and personnel practices. (But see *Page* v.

## DISCUSSION

The common law of California long provided that a governmental official has personal immunity from lawsuits challenging his or her discretionary acts within the scope of authority. (E.g., *Lipman* v. *Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224, 233 [11 Cal.Rptr. 97, 359 P.2d 465] (*Lipman*).) This common law immunity was said to extend to "all executive public officers when performing within the scope of their power acts which require the exercise of discretion or judgment." (*Hardy* v. *Vial* (1957) 48 Cal.2d 577, 582 [311 P.2d 494, 66 A.L.R.2d 739].) The immunity was absolute, and it protected an official "notwithstanding malice or other sinister motive." (*Ibid.*)

The historical basis of the rule was that fear of civil lawsuits might deter officials from the zealous and unflinching discharge of their public duties. (*Hardy* v. *Vial, supra,* 48 Cal.2d at p. 582; see *Gregoire* v. *Biddle* (2d Cir. 1949) 177 F.2d 579, 581 (L. Hand, J.).) On more than one occasion, we applied the rule liberally to protect the officials of public agencies, such as school districts and state colleges, when they took discretionary actions within the scope of their authority and duty concerning the employment of academic or administrative personnel. (*Lipman, supra,* 55 Cal.2d 224, 233-234 [school district trustees personally immune for investigating fitness of district superintendent]; *Hardy* v. *Vial, supra,* at p. 583 [state college officials personally immune for "conspiracy" with outsiders to secure dismissal of professor].)

In *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], this court repudiated any inference in the common law that *government entities* are generally immune from suit for the negligent *ministerial* acts of public employees acting in the scope of their authority. *Lipman, supra,* a companion case to *Muskopf,* held that the government retained some immunity for the *discretionary* acts of its officials, but suggested that this immunity was not necessarily coextensive with that afforded to the officials themselves. (*Lipman, supra,* 55 Cal.2d at p. 229.)

*Superior Court* (1995) 31 Cal.App.4th 1206, 1210-1217 [37 Cal.Rptr.2d 529] [construing provisions specially applicable to sexual harassment].) Resolution of that broad and difficult question (see, e.g., *Birkbeck* v. *Marvel Lighting Corp.* (4th Cir. 1994) 30 F.3d 507, 510, and *Miller* v. *Maxwell's Intern. Inc.* (9th Cir. 1993) 991 F.2d 583, 587-588, both concluding that similar language in federal employment discrimination statutes does not impose individual liability) seems far beyond the needs presented by the narrow facts before us. We therefore decline to address it. For purposes of our immunity analysis we assume, without deciding, that FEHA imposes individual tort liability on both public and private employees who cause or assist their covered "employers" to violate the statute. We also assume, without deciding, that in the absence of immunity, plaintiff has stated a valid claim against defendant Hansen for retaliatory discharge in violation of public policy. (But see *Gantt* v. *Sentry Insurance* (1992) 1 Cal.4th 1083, 1095 [4 Cal.Rptr.2d 874, 824 P.2d 680].)

In the wake of *Muskopf* and *Lipman,* the Legislature enacted the Tort Claims Act. The Act governs all public entities and their employees (§§ 811.2, 811.4) and all noncontractual bases of compensable damage or injury that might be actionable between private persons (§§ 810.8, 814). It establishes the basic rules that public *entities* are immune from liability except as provided by statute (§ 815, subd. (a)), that public *employees* are liable for their torts except as otherwise provided by statute (§ 820, subd. (a)), that public entities are vicariously liable for the torts of their employees (§ 815.2, subd. (a)), and that public entities are immune where their employees are immune, except as otherwise provided by statute (§ 815.2, subd. (b)).

The traditional immunity for discretionary acts is addressed in section 820.2. This statute provides that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

The Senate Legislative Committee comment appended to section 820.2 declares that the statute "restates the pre-existing California law. Lipman v. Brisbane Elem. School Dist., 55 Cal.2d 224 [11 Cal.Rptr. 97, 359 P.2d 465] (1961); Hardy v. Vial, 48 Cal.2d 577 [311 P.2d 494] (1957); White v. Towers, 37 Cal.2d 727 [235 P.2d 209, 28 A.L.R.2d 636] (1951). The discretionary immunity rule is restated here in statutory form to ensure that, unless otherwise provided by statute, public employees will continue to remain immune from liability for their discretionary acts within the scope of their employment." (Sen. Legis. Committee com., 32 West's Ann. Gov. Code (1980 ed.) § 820.2, pp. 226-227.)

*Johnson v. State of California, supra,* 69 Cal.2d 782 (*Johnson*), was our first case to construe section 820.2. There, after a parolee of the California Youth Authority (Authority) assaulted his foster mother, she and her husband sued the State of California (State), claiming that the Authority had placed the child in their care without warning of his known dangerous propensities. The State argued that because the parole agent had to exercise professional judgment in deciding how much confidential psychological information to release, the discretionary immunity of section 820.2 should apply.

After finding a duty of care based on the "special relationship" between the Authority and the foster parents, this court rejected the claim of immunity. It held that even if the decision to *grant* parole was an immune exercise of discretion, thus insulating both the agent and the State from suit, subsequent judgments about how to *implement* that decision were not similarly protected.

Our opinion reasoned as follows: almost all acts involve some choice among alternatives, and the statutory immunity thus cannot depend upon a literal or semantic parsing of the word "discretion." (*Johnson, supra,* 69 Cal.2d at pp. 787-790.) Moreover, the Act provides that a public employee sued personally for performance of duties may obtain both defense and indemnity from the employer, absent bad faith. (See § 825 et seq.) Hence, fears that personal exposure to damage suits and judgments would deter the vigorous performance of public responsibilities are no longer a policy basis for immunity. (*Johnson, supra,* 69 Cal.2d at pp. 790-793.)

■ Under these circumstances, *Johnson* concluded, a "workable definition" of immune discretionary acts draws the line between "planning" and "operational" functions of government. (*Johnson, supra,* 69 Cal.2d at pp. 793, 794.) Immunity is reserved for those *"basic policy decisions* [which have] . . . been [expressly] committed to coordinate branches of government," and as to which judicial interference would thus be "unseemly." (*Id.* at p. 793, italics in original.) Such "areas of quasi-legislative policy-making . . . are sufficiently sensitive" (*id.* at p. 794) to call for judicial abstention from interference that "might even in the first instance affect the coordinate body's decision-making process" (*id.* at p. 793).

On the other hand, said *Johnson,* there is no basis for immunizing lower-level, or "ministerial," decisions that merely implement a basic policy already formulated. (*Johnson, supra,* 69 Cal.2d at p. 796.) Moreover, we cautioned, immunity applies only to *deliberate and considered* policy decisions, in which a "[conscious] balancing [of] risks and advantages . . . took place. The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision. [Citations]." (*Id.* at p. 795, fn. 8.)

Recognizing that "it is not a tort for government to govern" (*Dalehite* v. *United States* (1953) 346 U.S. 15, 57 [97 L.Ed. 1427, 1452, 73 S.Ct. 956] (dis. opn. of Jackson, J.)), our subsequent cases have carefully preserved the distinction between policy and operational judgments. Thus, we have rejected claims of immunity for a bus driver's decision not to intervene in one passenger's violent assault against another (*Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 793-795 [221 Cal.Rptr. 840, 710 P.2d 907]), a college district's failure to warn of known crime dangers in a student parking lot (*Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 815 [205 Cal.Rptr. 842, 685 P.2d 1193]), a county clerk's libelous statements during a newspaper interview about official matters (*Sanborn* v. *Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 415-416 [134 Cal.Rptr. 402, 556 P.2d 764]), university therapists' failure to warn a

patient's homicide victim of the patient's prior threats to kill her (*Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 444-447 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]), and a police officer's negligent conduct of a traffic investigation once undertaken (*McCorkle* v. *City of Los Angeles* (1969) 70 Cal.2d 252, 261-262 [74 Cal.Rptr. 389, 449 P.2d 453]).

On the other hand, we have concluded that the discretionary act statute does immunize officials and agencies against claims that they unreasonably delayed regulations under which a murdered security guard might have qualified himself to carry a defensive firearm (*Nunn* v. *State of California* (1984) 35 Cal.3d 616, 622-623 [200 Cal.Rptr. 440, 677 P.2d 846]), or negligently released a violent juvenile offender into his mother's custody (*Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 747-749 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701]).

 Under this standard, there seems little doubt that votes by members of a school district's governing board whether to renew the superintendent's employment contract qualify as discretionary acts within the meaning of section 820.2. Indeed, in *Lipman, supra,* 55 Cal.2d 224, this court specifically held that community inquiries by school district trustees concerning a superintendent's fitness for continued employment must be considered immune discretionary acts within the scope of authority because, among other things, "[t]here is a vital public interest in securing free and independent judgment of school trustees in dealing with personnel problems." (*Id.* at p. 230.)

The Senate Legislative Committee comment for section 820.2 states that the statute was intended to codify this aspect of *Lipman*'s analysis. (Sen. legis. committee com., 32 West's Ann. Gov. Code, *supra,* § 820.2, pp. 226-227.) If a school district's governing board may thus freely *investigate* whether to terminate the employment of the district's superintendent, surely the board's final decision not to renew the superintendent's contract is entitled to similar protection.

Moreover, the decision about who should serve as superintendent of a school district particularly satisfies the immunity justifications set forth in *Johnson, supra,* 69 Cal.2d 782. The statutes specifically limit the length of a superintendent's contract and otherwise place the superintendent's employment within the sole authority and discretion of the district's governing board. (Ed. Code, §§ 35010, 35026, 35031, 35163, 35164.) The matter is therefore "expressly entrusted to a coordinate branch of government" at its highest level. (*Johnson, supra,* 69 Cal.2d at p. 793.)

The superintendent, in turn, is the district's foremost appointed official, with primary responsibility for representing, guiding, and administering it. (Ed. Code, § 35035.) The governing board's choice about who should occupy this crucial post is therefore a peculiarly sensitive and subjective one, with fundamental policy implications. There is a "vital public interest" (see *Lipman, supra,* 55 Cal.2d at p. 230) in encouraging *both* unfettered debate and judgment about the issue *and* candid public explanation by the politically accountable board members of the reasons for their votes.[4]

Judicial abstention with respect to the individual participants is thus appropriate. Where such an important policy issue is at stake, it would be unwise and unseemly to hold individual board members personally accountable at law for things they said or considered in the course of deliberations, or for their subsequent explanations of their decision. (See *Johnson, supra,* 69 Cal.2d at pp. 793-794.) Accordingly, the board's collective determination whether to hire or fire a person as the district's superintendent must be considered a basic policy decision, immune from civil damage actions that seek to hold individual board members liable for the motives behind their votes.[5]

█ We are not persuaded by the Court of Appeal majority's conclusion that the complaint fails to disclose a *conscious balancing of risks and benefits* necessary to qualify for immunity under *Johnson, supra.* (69 Cal.2d at p. 794, fn. 8.) *Johnson* precludes a finding of immunity solely on grounds that "the [affected] employee's *general course of duties* is 'discretionary' . . ." (*ibid.,* italics added), and requires a showing that "the specific conduct giving rise to the suit" involved an *actual* exercise of discretion, i.e., a "[conscious] balancing [of] risks and advantages" (*id.* at pp. 794, 795, fn. 8). But *Johnson* does not require a *strictly careful, thorough, formal, or correct* evaluation. Such a standard would swallow an immunity designed to protect

---

[4]We do not mean to suggest that a high official's public explanation of the reasons for his basic policy decision should be immune from suit if his comments are *themselves* actionable unless privileged. (Cf. *Sanborn* v. *Chronicle Pub. Co., supra,* 18 Cal.3d 406, 415-416; *Lipman, supra,* 55 Cal.2d 224, 234.) We merely express concern that public commentary might be discouraged by allowing suits in which such commentary would provide *evidence* of the allegedly impermissible *motives* behind the basic policy decision. Plaintiff's complaint in this case hints that the board members' public statements may have provided such evidence here.

[5]Of course, basic policy decisions entitled to immunity under section 820.2 are not limited to strictly legislative or regulatory issues. Indeed, the Act separately codifies the traditional "legislative" immunity for "adoption of or failure to adopt an enactment" within the scope of authority. (§ 821.) It is well settled that the more general immunity for discretionary acts also extends to fundamental decisions within the executive or administrative authority of the agency or official. (E.g., *Thompson* v. *County of Alameda, supra,* 27 Cal.3d 741, 747-748 [decision to release juvenile offender]; *Johnson, supra,* 69 Cal.2d 782, 795 [decision to parole youthful offender]; *Lipman, supra,* 55 Cal.2d 224, 230 [personnel issues].)

against claims of carelessness, malice, bad judgment, or abuse of discretion in the formulation of policy. (See *Hardy* v. *Vial, supra*, 48 Cal.2d 577, 582.) A fair reading of the instant complaint reveals allegations that the Board made an *actual, conscious, and considered* collective policy decision to replace plaintiff as superintendent. The complaint admits of no theory that the Board acted unconsciously or failed to weigh pros and cons. On the contrary, it asserts that Board members *did* purposefully employ standards they deemed relevant, but that the standards employed were wrong and impermissible. For reasons already stated, claims of *improper* evaluation cannot divest a discretionary policy decision of its immunity.[6]

 It follows that defendant Hansen's demurrer to the "public policy" cause of action against her was correctly sustained. As a claim founded solely in the common law of torts (see, e.g., *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]), this cause of action could not prevail against the individual immunity provided by section 820.2.

The more difficult question is whether suit may nonetheless proceed against all three individual defendants on the FEHA causes of action. Like Justice Turner below, plaintiff argues that because the FEHA counts are exclusive creatures of the Legislature, not the common law, they fall within section 820.2's limiting phrase "[e]xcept as otherwise provided by statute." We conclude, however, that this exception to the rule of personal immunity for discretionary acts is not as broad as plaintiff suggests.

No prior California decision has interpreted the phrase "[e]xcept as otherwise provided by statute" as it appears in section 820.2. Furthermore, the meaning of this language is not utterly clear on its face. Because the section states that a public employee "is not *liable*" for discretionary acts "[e]xcept as otherwise provided by statute" (*ibid.*, italics added), one might broadly

---

[6]We are aware that *Mouchette* v. *Board of Education* (1990) 217 Cal.App.3d 303 [266 Cal.Rptr. 1] appears to suggest otherwise. There, the Court of Appeal rejected claims of discretionary act immunity where trial evidence showed that a school board member, one Norwood, acting ostensibly for budgetary reasons, was motivated by personal animus when he caused the board to eliminate a subordinate administrator's position. Citing *Johnson, supra*, 69 Cal.2d 782, the court concluded that no immune discretionary act had occurred because Norwood had not rendered a decision "which balanced the risks and advantages of terminating [the] position." (*Mouchette, supra*, 217 Cal.App.3d at p. 313.) The court observed that according to the evidence, Norwood had not informed himself about the administrator's duties and had not studied the policy implications of the reorganization, such that it immediately became necessary to hire a replacement for the dismissed administrator. (*Ibid.*) We find the facts of *Mouchette* distinguishable in several material respects, but to the extent that case holds that only elaborate, fully informed deliberation can qualify for discretionary act immunity, we disapprove its reasoning.

construe it, as plaintiff does, to mean that whenever a "statute" of general application creates a *liability* applicable to public employees, the exception has been satisfied. Under this view, public employees might enjoy discretionary act immunity from common law forms of relief, but they would be stripped of such immunity for all causes of action created by statute.

But the context of the Tort Claims Act convinces us that a far more limited exception to immunity was intended. ■ In resolving the issue, we begin with the well-settled principle that " '[T]he intent of the [Act] is not to expand the rights of plaintiffs in suits against governmental entities [or employees], but to confine potential governmental liability to rigidly delineated circumstances: immunity is waived only if the various requirements of the [A]ct are satisfied.' " (*Brown* v. *Poway Unified School Dist.* (1993) 4 Cal.4th 820, 829 [15 Cal.Rptr.2d 679, 843 P.2d 624], quoting *Williams* v. *Horvath* (1976) 16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125], first brackets in *Brown.*)

As our cases explain, the very purpose of the Act is to afford categories of immunity where, but for its provisions, public agencies or employees would otherwise be liable under general principles of law. When addressing the Act's application, we have consistently regarded actionable duty and statutory immunity as separate issues, holding that in general, an immunity provision need not even be considered until it is determined that a cause of action would otherwise lie against the public employee or entity. This analytical treatment arises from our recognition that "the question of [actionable] ' "duty" . . . is only a threshold issue, *beyond which* remain the immunity barriers . . . .' " (*Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197, 202, quoting *Whitcombe* v. *County of Yolo* (1977) 73 Cal.App.3d 698, 706 [141 Cal.Rptr. 189], italics added.)

■ The Act's purpose that *specific immunities* should prevail over *general rules of actionable duty* is made particularly clear in the provisions dealing with public employees. Section 820, subdivision (a) expressly declares that "[e]xcept as otherwise provided by statute," a public employee *is liable* for injurious acts or omissions "to the same extent as a private person." Succeeding sections of the Act then set forth such statutory "[e]xcept[ions]," specifically granting public employees immunity in a number of specific instances where they might otherwise be liable. Among these is section 820.2, which codifies an immunity for discretionary acts "[e]xcept as otherwise provided by statute."

Even though section 820.2, like the Act in general, uses the generic phrase "is not liable" to describe the situations where suit is forbidden, the Senate

Legislative Committee comment which accompanies the section states its purpose with greater precision. The comment declares that "[t]he discretionary immunity rule is restated here in statutory form to ensure that, *unless otherwise provided by statute*, public employees will continue to remain *immune from liability* for their discretionary acts within the scope of their employment." (Sen. legis. committee com., 32 West's Ann. Gov. Code, *supra*, § 820.2, pp. 226-227, italics added.)

In other words, section 820.2 does not grant or withhold its protection on the basis of whether the legal duty asserted in the lawsuit arose by common law or by statute. Instead, the section erects a separate "barrier" or "hurdle" of *immunity* at a point "beyond" the "threshold issue" of legal duty. (*Davidson* v. *City of Westminster*, *supra*, 32 Cal.3d at p. 202, quoting *Whitcombe* v. *County of Yolo*, *supra*, 73 Cal.App.3d at p. 706; also cf. *Lopez* v. *Southern Cal. Rapid Transit Dist.*, *supra*, 40 Cal.3d 780, 784-795.)

The *exception* to this general rule must therefore operate on the same analytic premise. To paraphrase the Senate legislative committee, public employees are *immune* for their discretionary acts, even those which constitute breaches of actionable duty, unless a statute otherwise provides. It follows that where the immunity provided by section 820.2 would otherwise apply, that immunity cannot be abrogated by a statute which simply imposes a general legal duty or liability on persons, including public employees. Such a statute may indeed render the employee liable for his violations unless a specific immunity applies, but it does not remove the immunity. This further effect can only be achieved by a clear indication of legislative intent that statutory *immunity* is *withheld or withdrawn* in the particular case.

FEHA does not meet this test. It generally prohibits employment discrimination by both public and private "employer[s]" and provides civil remedies when its provisions are violated. But even if those remedies extend to individuals, including public employees, as "agents" or "aiders and abetters" of culpable "employer[s]" (see fn. 3, *ante*), FEHA contains no indicia of an additional intent that individual public officials or employees may be sued despite a specific statutory immunity that would otherwise apply in a particular case. Hence, FEHA does not abrogate section 820.2's specific grant of immunity to public employees for their discretionary acts.[7]

Plaintiff and amicus curiae Association urge that the fundamental policy against employment discrimination can only be vindicated by a ruling that

---

[7]A recent Court of Appeal decision, *Southern Cal. Rapid Transit Dist.* v. *Superior Court* (1994) 30 Cal.App.4th 713 [36 Cal.Rptr.2d 665], concluded on policy grounds that section 820.2's personal immunity for discretionary acts offered public officials or entities no protection against suits for wrongful discharge under a "whistle-blower" statute providing civil remedies when "employers" retaliate against their employees for initiating or assisting government false claims actions. Without extensive analysis, the court reasoned that to

FEHA liability prevails over the personal immunity for discretionary acts. A contrary holding, they suggest, would send the improper signal that high public officials have unique license to ignore FEHA, free of the threat of personal liability which may hang over their subordinates and private counterparts for violation of that law.

We acknowledge the importance of the rights codified by FEHA, and we do not condone invidious discrimination in the hiring, firing, or other treatment of any person who seeks or holds public employment. However, plaintiff fails to convince us that the Legislature intended the result he urges. Because plaintiff can cite no clear indication of legislative intent that FEHA suits should prevail over specific personal immunities provided by the Tort Claims Act, he is left with the argument that section 820.2, by its own terms, withholds such immunity whenever the theory of liability asserted in the lawsuit derives from "statute." However, such a construction of section 820.2 would conflate the separate barriers of duty and immunity. Moreover, it would lead to the anomalous conclusion that discretionary act immunity protects a public employee against *all* common law suits, however fundamental, but has no such effect against *any* statutory cause of action, however mundane. As we have suggested, that does not appear to be the purpose of section 820.2's phrase "[e]xcept as otherwise provided by statute."[8]

recognize discretionary immunity for a "retaliatory act expressly prohibited by [the statute] would emasculate [its] entire effect and purpose . . . ." (30 Cal.App.4th at p. 726.) The opinion purported to derive both its dispositive "principle" and its "result" from an earlier decision, *Shoemaker* v. *Myers* (1992) 2 Cal.App.4th 1407 [4 Cal.Rptr.2d 203]. *Shoemaker* held that section 821.6, which immunizes public employees against malicious prosecution actions, did not preclude a dismissed public investigator's statutorily based whistle-blower suit against high officials of the Department of Health Services for wrongful instigation of termination proceedings. The statute underlying the *Shoemaker* suit subjected "any" state "officer or employee" to direct civil liability for using official power against the efforts of another state officer or employee to report job-related violations of law to appropriate agencies. Noting this statute's specific purpose to hold *all state officers and employees* personally accountable for harming their whistleblowing colleagues or subordinates, the *Shoemaker* court reasoned that the law would be rendered largely illusory if, by acting through civil service proceedings, guilty officials could retain the more general immunity of section 821.6. (2 Cal.App.4th at pp. 1424-1425.) Insofar as such whistle-blower statutes focus in particular on those who act to suppress or punish revelations of fraud, corruption, or illegality in government business, the core statutory objectives might well be obviated by a conclusion that cover-up efforts by a public official are eligible for immunity. By their specific nature and purpose, such laws may indeed provide "a clear indication of . . . intent" (see text discussion, *ante*) that the personal immunities of public employees are abrogated. By contrast, FEHA promotes much more general policies throughout the public and private sectors and advances no specifically *governmental* interest that would support a finding of intent to abrogate any immunity of public employees. Thus, a conclusion that the whistle-blower statutes have such an effect does not compel a similar construction of FEHA.

[8]We are not persuaded to a contrary view by statements in *Ramos* v. *County of Madera* (1971) 4 Cal.3d 685 [94 Cal.Rptr. 421, 484 P.2d 93] and *Morris* v. *County of Marin* (1977) 18

Nor are we convinced that we have improperly weighed any competing policies presented by the relevant legislation. Because of the special needs of government and public service, the Tort Claims Act expressly allows public employees to engage in certain acts and omissions free of suit, even when they might otherwise be liable for causing injury or violating individual rights. Among the statutory protections afforded is the immunity for discretionary acts, which leaves public officials free of unseemly judicial interference against them personally when they debate and render those basic policy and personnel decisions entrusted to their independent judgment. (*Johnson, supra,* 69 Cal.2d 782, 793; *Lipman, supra,* 55 Cal.2d 224, 230.)

When elected school board members, representing their constituencies, decide in whom they will repose confidence as the chief executive, policy architect, and personal symbol of a diverse public school system, they engage in the quintessential discretionary act of government. Under the Act, they are thus immune from personal suit, even if the motives which influenced their decision might otherwise give rise to actions against them grounded in FEHA.

---

Cal.3d 901 [136 Cal.Rptr. 251, 559 P.2d 606] that local public agencies have no immunized "discretion" to depart from "mandatory duties" established by state law. In *Ramos,* county officials imposed welfare eligibility standards in addition to those under which state statutes commanded that assistance " '*shall* be granted.' " (*Ramos, supra,* at p. 694, italics added by *Ramos.*) In *Morris,* county agents issued a construction permit without obtaining the certificate of insurance which state statutes declared "*shall* [be] require[d]." (*Morris, supra,* at p. 906, italics added.) In both cases, the Legislature had made the basic policy decision about what specific, affirmative actions certain public agencies must take in particular circumstances, and their performance of those duties was therefore merely ministerial. (*Ramos, supra,* 4 Cal.3d at pp. 692-695; *Morris, supra,* 18 Cal.3d at pp. 911-917.) Each case also involved a direct claim that suit was authorized by section 815.6, which declares that a public entity is liable for certain injuries caused by its failure to discharge a "mandatory duty." (*Ramos, supra,* at pp. 695-696, *Morris, supra,* at pp. 906-911.) *Lopez* v. *Southern California Rapid Transit Dist., supra,* 40 Cal.3d 780, though it involved no direct application of section 815.6, is to similar effect. There, a statute had imposed an *affirmative duty* on common carriers, public and private, to take reasonably diligent steps to protect passengers from assaults by their fellows; this basic policy decision by the Legislature removed a public bus driver's discretion to ignore an assault occurring on his bus. (*Lopez, supra,* 40 Cal.3d at pp. 793-794.) Here, by contrast, the Education Code confers upon PUSD and its elected Board the basic, and essentially subjective, policy decision about who should serve as the district's superintendent. The statutes allow the Board broad discretion in making that decision. While FEHA establishes a limited category of employment criteria which are *prohibited* to all employers, public and private, plaintiff makes no claim that FEHA imposes any "*mandatory duty*" on PUSD or the Board to take any *specific, affirmative action* in addressing matters of hiring and firing. Despite some broad dictum in our prior case law (see, e.g., *Ramos, supra,* 4 Cal.3d at p. 696), we do not read our cases to hold that a public employee acts beyond his discretion, or breaches a "mandatory duty," whenever he or she commits a statutory violation while performing public duties. (Cf. *Clausing* v. *San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1239-1240 [271 Cal.Rptr. 72] [statute which merely *prohibits* conduct does not create "mandatory duty" for purposes of Tort Claims Act].) Such a rule would vastly undermine the immunity for discretionary acts.

In sum, we hold as follows: as a matter of law, the decision by members of an elected school board whether to renew the contract of the district's superintendent is a basic policy decision, and thus a discretionary act of the kind for which public employees are entitled to personal immunity under section 820.2 of the Tort Claims Act. By the terms of section 820.2, such personal immunity applies even against liabilities imposed by prohibitory state statutes of general application such as FEHA, unless there is a clear indication of legislative intent that immunity be withdrawn in the particular case. There is nö indication of legislative intent that, notwithstanding the statutory immunity for discretionary acts, public employees may be personally sued for personnel decisions which violate FEHA. Hence, that immunity must prevail, if otherwise applicable, over FEHA claims against public employees in their individual capacities.[9]

For the reasons herein stated, the trial court correctly sustained defendants' demurrer to the causes of action against them personally. The Court of Appeal erred in reversing the judgment dismissing the individual causes of action.

[9]Nothing we say here is intended to imply that because the individual board members are immune, plaintiff's FEHA claim against *PUSD itself* is also barred. Section 815.2 does generally provide that a public entity is liable for an employee's act or omission within the scope of employment if the employee himself could be sued (subd. (a)), but that the entity is immune if the employee is immune (subd. (b)). We observe, however, that section 815.2 simply applies principles of *vicarious* entity liability. In subdivision (b), it establishes the premise that if the directly liable employee himself cannot be sued, the doctrine of respondeat superior should not apply against the entity. (See *Bradford* v. *State of California* (1973) 36 Cal.App.3d 16, 20 [111 Cal.Rptr. 852].) However, FEHA creates *direct* statutory rights, obligations, and remedies between a covered "employer," private or public, and those persons it considers or hires for employment. (§§ 12926, subd. (d), 12940, subds (a), (c)-(k), 12941, 12942, 12945, 12945.2, 12945.5, 12946, 12947.5, 12950, 12965.) FEHA thus provides a basis of direct entity liability independent of the derivative liabilities addressed in section 815.2. Accordingly, any personal immunity of a public employee against a particular FEHA claim does not necessarily accrue to the benefit of the public entity itself as a covered "employer." (See *Bradford, supra,* 36 Cal.App.3d at p. 20; also cf. *Ramos* v. *County of Madera, supra,* 4 Cal.3d 685, 695.) In any event, the issue of entity immunity is not before us in this case, and we do not decide it.

Our holding is further limited to causes of action based on state statutes. We express no views on the absolute or qualified immunity of any public employee against causes of action based on federal statutory or constitutional law. (See, e.g., *Martinez* v. *California* (1980) 444 U.S. 277, 284 [62 L.Ed.2d 481, 488-489, 100 S.Ct. 553]; *Fenton* v. *Groveland Community Services Dist.* (1982) 135 Cal.App.3d 797, 808 [185 Cal.Rptr. 758]; *Guillory* v. *County of Orange* (9th Cir. 1984) 731 F.2d 1379, 1382; see also *Harlow* v. *Fitzgerald* (1982) 457 U.S. 800, 813-819 [73 L.Ed.2d 396, 407-411, 102 S.Ct. 2727].)

Finally, our analysis makes it unnecessary to address the alternate argument of defendants and amicus curiae Alliance that defendants are afforded personal immunity by section 820.9, which specifies that certain local officials, including school board members, are personally immune from suits asserting vicarious liability for the acts or omissions of the entities they serve, but are not immune for their own "wrongful conduct."

## DISPOSITION

The judgment of the Court of Appeal is reversed.

Lucas, C. J., Mosk, J., Kennard, J., Arabian, J., George, J., and Werdegar, J., concurred.