Filed 1/14/25; Certified for Publication 1/31/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| D.G., | |
| Plaintiff and Appellant, | G063411 |
| v. | (Super. Ct. No. 30-2021-01184865) |
| ORANGE COUNTY SOCIAL SERVICES AGENCY et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, David J. Hesseltine, Judge. Reversed and remanded.

Herman Law and Blake J. Woodhall for Plaintiff and Appellant.

Koeller, Nebeker, Carlson & Haluck, Zachary M. Schwartz, Amanda B. Peterson and Kiran Sohail Idrees for Defendants and Respondents.

\* \* \*

Plaintiff D.G. sued defendants Orange County Social Services Agency and County of Orange (the County)[1] for negligence arising out of alleged sexual abuse by D.G.'s foster father from the time he was a small child until he was a teenager, beginning in the mid-1970's.[2] He contends he repeatedly informed the social worker that "bad people are hurting me." The County moved for summary judgment, arguing there was insufficient evidence the County was aware of any abuse or risk of abuse while D.G. was in the alleged abuser's foster home. The trial court ultimately agreed that the information reported to the County was insufficient to make it reasonably foreseeable that ongoing abuse was occurring. Alternatively, the court found that discretionary immunity applied.

We disagree. On the negligence claim, the County failed to meet its burden to demonstrate a duty of care does not exist. Moreover, we find that discretionary act immunity does not apply. We conclude there was no considered decision to leave D.G. in the foster home after he reported he was being hurt by "bad people." Therefore, we reverse the judgment and remand the matter for further proceedings.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

D.G. and his siblings were first placed in the foster home of Howard Graubner (Howard) and his wife Ann in 1972, when D.G. was three

---

[1] Orange County Social Services is an internal agency within the County and when referring to the County it includes both.

[2] This case was filed after the Legislature extended the statute of limitations for child sexual abuse. (Code Civ. Proc., § 340.1 as amended by Stats. 2019, ch. 861, § 1.)

years old. The Graubners were licensed foster parents[3] who had no criminal history and had never been accused of sexual abuse.

D.G.'s assigned social worker, as of 1975, was Judy Tanasse. She worked in the adoptions division, and she was assigned to find a permanent home for D.G. once reunification with his biological parents failed. At the time, social workers were only required to contact dependent children every three months, and trial court hearings were conducted annually. Tanasse contacted D.G. in a manner consistent with these requirements.

According to D.G.'s interrogatory responses, he first told Tanasse that "bad people are hurting me," when he was approximately five years old, but did not indicate to Tanasse to whom he was referring. D.G. claimed he told Tanasse this "repeatedly." He further stated he "tried to explain how the bad people were hurting" him. The County does not point to any evidence in the record that Tanasse followed up on D.G.'s statements. As further evidence of abuse, D.G. claimed that Tanasse was aware of a bedwetting problem and that he was seeing a doctor who prescribed medication for it. He did not have a bedwetting problem before living with the Graubners.

Tanasse testified in her deposition that bedwetting was common in children who had experienced trauma, but she did not consider it as a red flag based on the context of D.G.'s history and situation. D.G. also points to the report of a nine-year-old foster child, R.S., to a different social worker, several years before D.G. moved into the home. R.S. told his social worker at the time that he felt "weird" taking showers with Howard because it was

---

[3] At the time, licensing decisions were apparently made by the state rather than the County, but the status of the Graubners' license is not at issue here.

"yucky."[4] The County does not point to any evidence that it followed up on R.S.'s report, and it continued to place children, including D.G., with the Graubners after R.S. made this report.

Tanasse, for her part, had no suspicions of sexual abuse in the Graubner home. Based on her professional experience at the time, she determined that the Graubner foster home was the best place for D.G. and that adoption should be the permanent plan. D.G. told Tanasse that he wanted to stay in the home, wanted to be adopted by the Graubners and that they felt like his real family. An adoption home study did not reveal evidence of abuse or the risk of abuse. D.G. was adopted by the Graubners when he was nine years old, in 1978.

D.G. lived with the Graubners until approximately 1984 or 1985, when he was arrested for bringing a gun to school. Thereafter, he was supervised by the Probation Department in out-of-home care. He did not reside with the Graubners again.

In 1986, D.G. disclosed to a therapist at juvenile hall that Howard had molested him. The therapist reported this to the County, which was the first formal report of sex abuse that the County received about Graubner. In 2019, Graubner admitted to sexually abusing his four oldest sons, including D.G.

D.G. filed the instant case in 2021, alleging a single claim for negligence. The complaint alleged that Howard "repeatedly sexually assaulted and abused [D.G]. The sexual abuse and assault included, but was

---

[4] See *R.S. v. Orange County Social Services Agency et al.* (Sept. 20, 2024, G063041) [nonpub. opn.]. While the County references this case, it did not file a request for judicial notice in this court. (See Cal. Rules of Court, rule 8.809(a).)

not limited to, fondling, masturbation, and being forced to perform oral copulation on Howard . . . . The abuse occurred frequently and persisted throughout [D.G.'s] placement with the [Graubners]."

The trial court eventually granted summary judgment on two grounds. First, the court found no duty to protect D.G. from Howard's "unforeseeable criminal conduct." Second, the court found the social worker, and therefore the County, was immune under Government Code section 820.2, which provides immunity for discretionary acts. Judgment was subsequently entered in the County's favor. D.G. now appeals.

DISCUSSION

I.

STANDARD OF REVIEW

"A motion for summary judgment is properly granted only when 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (*Luebke v. Automobile Club of Southern California* (2020) 59 Cal.App.5th 694, 702.) "To carry its initial burden when the motion is directed to the plaintiff's case rather than an affirmative defense, a defendant must present evidence that either 'conclusively negate[s] an element of the plaintiff's cause of action' or 'show[s] that the plaintiff does not possess, and cannot reasonably obtain,' evidence necessary to establish at least one element of the cause of action. [Citation.] Only after the defendant carries that initial burden does the burden shift to the plaintiff 'to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto.'" (*Id.* at pp. 702–703.)

We review a grant of summary judgment de novo. (*Luebke v. Automobile Club of Southern California*, *supra*, 59 Cal.App.5th at p. 703.)

5

In doing so, we essentially step into the shoes of the trial court, using the same method to evaluate the parties' arguments and applying the same rules. (*Huntsman-West Foundation v. Smith* (2024) 104 Cal.App.5th 1117, 1131.)

## II.

### NEGLIGENCE

As noted above, the County's initial burden is to negate an element of the cause of action, or to demonstrate the plaintiff does not possess, and cannot obtain, evidence necessary to establish at least one element of the cause of action. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851.)

"To succeed in a negligence action, the plaintiff must show that (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the duty, and (3) the breach proximately or legally caused (4) the plaintiff's damages or injuries." (*Thomas v. Stenberg* (2012) 206 Cal.App.4th 654, 662.) As a general matter, there is no duty to protect against the criminal conduct of a third party, but an important exception exists when there is a special relationship between the plaintiff and defendant. (*Barenborg v. Sigma Alpha Epsilon Fraternity* (2019) 33 Cal.App.5th 70, 76.) "'[A] typical setting for the recognition of a special relationship is where "the plaintiff is particularly vulnerable and dependent upon the defendant who, correspondingly, has some control over the plaintiff's welfare."'" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 621 (*Regents*).) There is no dispute that a foster child is in a special relationship with the agency that provides his or her care. (See *Doe v. Los Angeles County Dept. of Children & Family Services* (2019) 37 Cal.App.5th 675, 683; *Doe v. United States Youth Soccer Assn., Inc.* (2017) 8 Cal.App.5th 1118, 1129.)

Once a special relationship is established, the trial court must look to the factors set forth in *Rowland v. Christian* (1968) 69 Cal.2d 108 *(Rowland)*, to decide whether they require creating an exception to the duty of care at issue. (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 209.) The *Rowland* factors include "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland,* at pp. 112–113.) The court, however, analyzed only foreseeability.

Even when considering that factor, we find the trial court's analysis insufficient. The court found that the statement of R.S., D.G.'s foster brother, about feeling "yucky" showering with Howard, D.G.'s statements to Tanasse that "bad people are hurting me," and D.G.'s bedwetting did not constitute actual knowledge that would make Howard's conduct foreseeable. But as the California Supreme Court held in *Regents*, *supra*, 4 Cal.5th 607: "In examining foreseeability, 'the court's task . . . "is not to decide whether *a particular* plaintiff's injury was reasonably foreseeable in light of *a particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed . . . .""" (*Id.* at p. 629.) The court did not do this, and this is not the County's approach on appeal, where it continues to argue the facts presented in the summary judgment motion did not support a finding of actual knowledge.

7

The relevant question, however, is whether the category of negligent conduct alleged here—the failure to investigate sexual abuse by a foster parent once the potential for abuse is raised by a foster child—is likely to result in the harm experienced, namely, continued sexual abuse. (See *Doe v. United States Youth Soccer Assn., Inc., supra*, 8 Cal.App.5th at p. 1133.)

The trial court found, and the County maintains, that actual knowledge of abuse is necessary to find the conduct was reasonably foreseeable, thereby imposing a duty to protect. The court cited *Doe v. Los Angeles County Dept. of Children & Family Services, supra*, 37 Cal.App.5th 675. But the California Supreme Court rejected this approach in *Regents*: "[C]ase-specific foreseeability questions are relevant in determining the applicable standard of care or breach in a particular case. They do not, however, inform our threshold determination that a duty exists." (*Regents, supra*, 4 Cal.5th at p. 630.)

The County relies on cases that predate *Regents* to argue we should analyze the issue of duty by examining the foreseeability of the harm caused by a particular defendant. (See *J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 391, 393, 396; *Margaret W. v. Kelley R.* (2006) 139 Cal.App.4th 141, 152.) But under *Rowland*, this is not the correct analysis. We must examine whether it was foreseeable that the *category* of negligent conduct was likely to result in the type of harm alleged. In this context, we must conclude it was sufficiently foreseeable that the failure by the County to inquire or investigate when a foster child suggested abuse had occurred makes it appropriate to impose a duty to protect.

Additionally, the other *Rowland* factors—with the exception of the availability of insurance, about which the record includes no information—do not support an exception to imposing a duty in this case. The

8

certainty of harm in this case is alleged to be high. Courts have recognized that "'[t]he significant emotional trauma caused by childhood sexual abuse . . . is well documented . . . .'" (*Brown v. USA Taekwondo* (2019) 40 Cal.App.5th 1077, 1098.) The type of injury is directly connected to the alleged negligence of the County, and the policy of preventing future harm is strong. While we recognize the burden of finding a tort duty is significant, it is overcome by the importance of protecting children from sexual abuse.

Finally, there is the factor of "moral blame." It is hard to assess in this case because it is difficult to avoid attributing 2024 knowledge about childhood sexual abuse to those who were acting in the mid-1970's. We must distinguish between the social worker—and there is no evidence before us that she personally did anything wrong—and the County, which had the responsibility of making and implementing the *policies* designed to keep foster children safe. There is scant evidence of those policies in the record. Nonetheless, some degree of moral blame must be attributed to the County for failing to act once it had indicators of sexual abuse.

Taken as a whole, the *Rowland* factors do not support an exception to imposing a duty of care on the County to act reasonably to prevent the sexual abuse of minors placed in foster care. Accordingly, we find the trial court erred by granting summary judgment based on the lack of a duty of care in this case.

## III.

### DISCRETIONARY ACT IMMUNITY

The trial court devoted only one paragraph of its order to this issue, finding that "social workers are immune from claims arising from their placement of minors in foster care and decisions regarding whether a minor

9

should remain or be removed from that placement because those are discretionary decisions judicially delegated to social workers."

The decision to apply discretionary act immunity requires a two-part analysis. First, we decide whether the decision at issue is a discretionary, as opposed to a ministerial one. We agree with the trial court and the County that "decisions of child welfare agency employees—regarding determinations of child abuse, the potential risk to a child, placement of a child, removal of a child, and other resultant actions—are subjective *discretionary* ones that are incidental to the employees' investigations." (*B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 191–192.) But this is only part of our inquiry.

The second part of the discretionary act immunity analysis is whether the employee who made the decision at issue "actually reached a considered decision knowingly and deliberately encountering the risks that give rise to plaintiffs complaint. . . . [¶] [T]o be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place. The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision." (*Johnson v. State of California* (1968) 69 Cal.2d 782, 794, fn. 8.) In *Caldwell v. Montoya* (1995) 10 Cal.4th 972, the California Supreme Court applied the same test: "*Johnson* precludes a finding of immunity solely on grounds that 'the [affected] employee's *general course of duties* is "discretionary" . . .' [citations], and requires a showing that 'the specific conduct giving rise to the suit' involved an *actual* exercise of discretion, i.e., a '[conscious] balancing [of] risks and advantages.'" *(Id.* at p. 983.)

There is simply no evidence in the record that Tanasse, or anyone else, exercised discretion as described in *Johnson* and *Caldwell*. In a declaration opposing summary judgment, Tanasse stated: "Based upon my professional experience and judgment at the time and weighing all relevant circumstances, I determined that placement in the Graubner foster home was the best place for [D.G.] and that adoption of [D.G.] by Howard and Ann Graubner was the best permanent plan for [D.G]. [D.G.] appeared to be happy in the home and exhibited age appropriate behavior and development. I never observed and was never aware of any red flags concerning the Graubner foster home or any risk of abuse."

This declaration did not mention any of the indicators of possible abuse. The County does not point to evidence in the record that Tanasse made a judgment call about whether to leave D.G. in the foster home *after* considering possible abuse based on his statements that "bad people are hurting me," the development of his bedwetting problem, or R.S.'s statements about showering with Howard before D.G. was placed with the Graubners. Accordingly, we find that the County failed to shift the burden to D.G. on this issue.

Even if we were to find that Tanasse's statement was sufficient to shift the burden, we would find the evidence sufficient to create triable issues of fact as to whether Tanasse did actually consider facts indicating possible abuse before deciding that D.G. should be placed and remain placed with the Graubners. The evidence must show a conscious, considered decision in light of all the relevant facts. (*Caldwell*, *supra*, 10 Cal.4th at p. 983.) The fact that Tanasse did not discuss any of the indicators of possible abuse in her declaration suggests those facts were not considered. Discretionary act

11

immunity, therefore, does not provide a basis for granting summary judgment in this case.

## DISPOSITION

The judgment is reversed and the case remanded for further proceedings. D.G. is entitled to his costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

DELANEY, J.

Filed 1/31/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| D.G.,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>ORANGE COUNTY SOCIAL<br>SERVICES AGENCY et al.,<br><br>  Defendants and Respondents. | G063411<br><br>(Super. Ct. No. 30-2021-01184865)<br><br>ORDER GRANTING REQUEST<br>FOR PUBLICATION |

        Attorney Alan Charles Dell'Ario, of Consumer Attorneys of California, has requested that our opinion, filed on January 14, 2025, be certified for publication.  It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c).  The request is GRANTED.

        The opinion is ordered published in the Official Reports.


                                                MOORE, ACTING P. J.

WE CONCUR:


MOTOIKE, J.


DELANEY, J.