Filed 6/21/23  Sanchez v. City of San Diego CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| NANCY SANCHEZ,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>CITY OF SAN DIEGO,<br><br>  Defendant and Respondent. | D079922<br><br><br>  (Super. Ct. No. 37-2020-00038691-CU-MC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Gregory Pollack, Judge.  Affirmed.

Pease Law and Bryan W. Pease for Plaintiff and Appellant.

Mara W. Elliott, City Attorney, M. Travis Phelps, Assistant City Attorney, Catherine A. Richardson, Chief Deputy City Attorney, for Defendant and Respondent.

In May 2016, Nancy Sanchez attended a protest at the site of a rally for then-presidential candidate Donald Trump in San Diego.  After the San Diego Police Department (SDPD) declared an unlawful assembly, officers moved protesters away from the rally site and later arrested Sanchez and

other "anti-Trump" protestors about one mile from the site. Sanchez was jailed overnight for failure to disperse, but she was not ultimately prosecuted.

Sanchez and other anti-Trump protestors brought suit in federal court against several SDPD officials and the San Diego County Sheriff's Department, the City of San Diego (the City), and the County of San Diego (the County). The plaintiffs alleged both state and federal causes of action, including constitutional claims, related municipal liability claims, various state tort and civil rights claims, and a request for declaratory relief.

In September 2020, the federal district court granted summary judgment to the County and the City as to all the plaintiffs' claims except for their state tort claims (negligence, false imprisonment, and assault and battery) against the City based on vicarious liability. The district court dismissed those claims without prejudice to be re-filed in state court. The Ninth Circuit later affirmed the district court's decision. (See *Ramirez v. Zimmerman* (9th Cir. Nov. 3, 2021, No. 20-56117) 2021 U.S. App. LEXIS 32726 (*Ramirez*).)

While their federal appeal was pending, the plaintiffs brought suit in state court against the City, alleging most of the same claims from their federal suit as well as new class action and California Public Records Act (Gov. Code, § 6258 (CPRA))[1] allegations. The City filed a demurrer to the plaintiffs' first amended complaint, and in August 2021, the trial court

---

[1]    Further statutory references are to the Government Code unless otherwise stated.

sustained the demurrer without leave to amend based on res judicata,[2] statutory immunity, and other grounds.

Sanchez[3] contends on appeal that the trial court erred by finding that: (1) statutory immunities barred some of Sanchez's claims; (2) Sanchez did not adequately plead many of her claims; and (3) her notices of claim did not meet the requirements of the Government Claim Act (§ 900, et seq.).

We conclude that Sanchez forfeited any challenge to the trial court's res judicata ruling barring five of her claims by failing to challenge it in the opening brief, failing to cite any relevant authorities, and failing to provide any meaningful argument on the issue. We further conclude that the trial court did not err in granting the City's demurrer as to Sanchez's remaining tort claims because statutory immunity barred her negligence claim, and her government claim form did not give adequate notice of a cause of action for assault and battery. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Because this case arises from a demurrer sustained without leave to amend, we deem true all well-pleaded factual allegations of the complaint. (*Masters v. San Bernardino County Employees Retirement Assn.* (1995) 32 Cal.App.4th 30, 35.)

---

[2] Although the modern term for res judicata is claim preclusion (*Samara v. Matar* (2018) 5 Cal.5th 322, 326), we will refer to it as res judicata to be consistent with the terminology used by the parties and the trial court.

[3] Plaintiffs Jairo Cervantes, Brandon Steinberg, and Madison Goodman filed a notice of appeal with this court along with Sanchez. Because Cervantes, Steinberg, and Goodman failed to file a brief after notice was given pursuant to California Rules of Court, rule 8.220(a), we dismissed their appeals.

3

## A. *May 2016 Rally*

On May 27, 2016, then-presidential candidate Donald Trump held a rally at the San Diego Convention Center. Both Trump supporters and anti-Trump protestors gathered outside the venue during and after the rally, and several hundred police officers were present in the vicinity. The City planned for the event for weeks and developed an Incident Action Plan, which involved keeping Trump supporters and anti-Trump protestors separated by barricades. SDPD also had a contingency plan that involved pushing crowds east on Harbor Drive towards Chicano Park.

The City implemented an Incident Command System for the event. According to the complaint, this is a hierarchical structure that allows for a cooperative response by multiple agencies to organize and coordinate response activities. SDPD and the San Diego Fire Department were the unified joint command for the event. They set up a command post in Petco Park. A lieutenant for SDPD was assigned to convey radio instructions from incident command to officers in the field.

Between 1:00 p.m. and 3:00 p.m. that afternoon, there were reports of anti-Trump protestors carrying bats, fights breaking out, and plastic bottles being thrown at officers in the blocks near the rally venue. After skirmishes continued and some protestors set small fires, by around 4:40 p.m. the command post ordered officers to declare the assembly unlawful.[4] Officers repeated unlawful assembly announcements thereafter and the command

---

[4] Penal Code section 726 authorizes law enforcement officials to declare an unlawful assembly and command those present to disperse. Penal Code section 409 makes it a misdemeanor for anyone to remain present after such a warning to disperse. Penal Code section 407 defines an unlawful assembly as follows: "Whenever two or more persons assemble together to do an unlawful act, or do a lawful act in a violent, boisterous, or tumultuous manner, such assembly is an unlawful assembly."

4

post directed officers to move the remaining crowd southeast from the Convention Center toward Logan Heights. Officers prevented anti-Trump protestors from moving north and west, while Trump supporters were directed to disperse south and onto side streets.

Law enforcement gave conflicting dispersal instructions to both anti-Trump protestors and Trump supporters at various times. However, by around 5:20 p.m., protestors had largely cleared the area while a smaller crowd of anti-Trump protestors remained in the plaza by the trolley tracks near Fifth Avenue and L Street. Soon after, on instructions from the incident command, officers began pushing the remaining protestors southeast onto Harbor Drive for about a mile into the Barrio Logan neighborhood while Trump supporters stood undisturbed on the west side of Fifth Avenue. During this push down Harbor Drive, Sanchez and other remaining protestors were unable to leave.

At approximately 6:30 p.m., incident command ordered officers to begin making arrests. Another unlawful assembly announcement was made, and Sanchez was arrested minutes later for failure to disperse. At the time of her arrest, Sanchez was walking away from officers in the direction anti-Trump protestors had been ordered to walk.

B. *Federal Proceeding*

Sanchez and four other anti-Trump protestors who were arrested (including plaintiffs' counsel Bryan Pease) filed suit in federal district court against officials in the SDPD and the City (City Defendants), as well as the San Diego Sheriff's Department and the County. They alleged that the defendants violated their civil rights by preventing their peaceful assembly, forcing them to walk down Harbor Drive, and making unlawful arrests. The defendants moved for summary judgment on the following claims: (1) a 42

5

United States Code section 1983 (section 1983) cause of action under *Monell v. Department of Social Services* (1978) 436 U.S. 658 (*Monell*); (2) violations of the First and Fourth Amendments pursuant to section 1983; (3) violations of Civil Code sections 51.7 (Ralph Act) and 52.1 (Bane Act); (4) false imprisonment; (5) assault and battery; (6) negligence; and (7) declaratory and injunctive relief.

The district court granted summary judgment to the City Defendants as to the plaintiffs' First Amendment claims, finding that the plaintiffs had no constitutional right to peaceably assemble after police began enforcing a valid unlawful assembly declaration. The court also found that the City Defendants were entitled to qualified immunity from plaintiffs' First Amendment claims. As for the alleged Fourth Amendment violations, the court determined that the facts failed to demonstrate that any seizure was unreasonable as a matter of law. The court also found that the City Defendants were again entitled to qualified immunity on the plaintiffs' Fourth Amendment claims.

Because the district court determined that the plaintiffs failed to raise a factual dispute on their constitutional claims, the court granted summary judgment to the City Defendants on the *Monell* claim. The court also granted summary judgment on the plaintiffs' Ralph Act and Bane Act claims, which alleged that SDPD officers committed or threatened violence because of the plaintiffs' political preferences, and with the intention of interfering with their constitutional rights. The court found that the facts did not show any officers committed or threatened violent acts, nor did they show that the officers interfered with any constitutional or statutory right.

Regarding the plaintiffs' state tort claims for false imprisonment, assault and battery, and negligence, the district court determined that

6

though the plaintiffs could not hold the City directly liable for the acts and omissions of its officers, the City could still be held vicariously liable if statutory immunity did not apply. The court noted that although the defendants raised statutory immunities as affirmative defenses in their answer to the operative complaint, they did not move for summary judgment on those grounds. For those reasons, the court granted summary judgment to the City Defendants on the plaintiffs' state tort claims to the extent they sought to hold the City directly liable. The court denied summary judgment on plaintiffs' tort claims seeking to hold individual officers directly liable and the City vicariously liable.

Lastly, as to the plaintiffs' request for declaratory and injunctive relief, the district court found there was no evidence that the plaintiffs faced an immediate threat of harm from the City Defendants' allegedly unconstitutional conduct in this case. The court further found that the plaintiffs' request for a declaration that the City Defendants' policies and conduct were unconstitutional was duplicative of their section 1983 claims. On those bases, the court granted summary judgment to the City Defendants as to the plaintiffs' claims for equitable relief.

In sum, the district court granted the City Defendants' summary judgment motions as to all claims except for those seeking to hold individual SDPD officers directly liable, and the City vicariously liable, for false imprisonment, assault and battery, and negligence. As to these remaining state-law claims against the City Defendants, the court declined to exercise its supplemental jurisdiction and dismissed them without prejudice to being re-filed in state court. The court also granted summary judgment to the Sheriff's Department employees and the County on all claims brought against them.

7

The plaintiffs appealed the decision to the Ninth Circuit, and as discussed below, they also filed suit in state court. While the state court proceeding was pending, the Ninth Circuit affirmed the district court's decision and concluded, among other things, that the plaintiffs' *Monell* claim failed because "the record contain[ed] no evidence that [the Chief of SDPD] ratified a subordinate's unconstitutional action[,]" nor did the plaintiffs argue that the Chief knew of a constitutional violation. (*Ramirez*, *supra*, 2021 U.S. App. LEXIS 32726 at pp. *1–*2.) The Ninth Circuit also determined that qualified immunity shielded the individual officers from the plaintiffs' constitutional claims, and that the plaintiffs forfeited their challenges to the dismissal of their Ralph Act and state tort claims by failing to brief them on appeal. (*Id.* at pp. *2–*4.)

*C. State Proceeding*

After appealing the district court's decision, the plaintiffs (except for Pease) brought suit in state court against only the City, alleging the following causes of action: (1) writ of mandate; (2) declaratory relief; (3) negligence; (4) assault and battery; (5) false imprisonment; (6) Ralph Act violations; (7) Bane Act violations; and (8) violations of the CPRA.

The City filed a demurrer to the plaintiffs' first amended complaint, and in August 2021, the trial court sustained the demurrer without leave to amend. The court found that the plaintiffs' writ of mandate (count 1), declaratory relief (count 2), false imprisonment (count 5), Ralph Act (count 6), and Bane Act (count 7) claims were barred by res judicata. The court further found that counts 1, 2, and 4 (assault and battery) were barred due to the plaintiffs' failure to provide adequate notice in their government claim form. Regarding count 3 for negligence and counts 5, 6, and 7, the court determined that statutory immunities set forth in sections 815.2, 820.2, and 845 barred

8

those claims. Lastly, the court sustained the City's demurrers to the plaintiffs' CPRA claims (counts 8 and 9) due to lack of standing.

Sanchez timely appealed. In her reply brief, she has confirmed that she is not appealing the dismissal of her CPRA claims (counts 8 and 9).

DISCUSSION

I

Sanchez first argues that the trial court erred by finding that statutory immunities barred her claims for negligence, false imprisonment, Ralph Act violations, and Bane Act violations. In response, however, the City contends that the trial court properly found that res judicata barred all of Sanchez's claims except for negligence and assault and battery. Without deciding whether res judicata was a proper basis for sustaining the City's demurrer, we conclude that because Sanchez failed to meaningfully address the trial court's reliance on res judicata in her opening brief, she has forfeited her challenge to the court's rulings on that basis.

"Issues not raised in the appellant's opening brief are deemed waived or abandoned." (*Aptos Council v. County of Santa Cruz* (2017) 10 Cal.App.5th 266, 296, fn. 7.) It is the appellant's responsibility to support claims of error with meaningful argument and citation to authority. When meaningful argument with citation to authority is not furnished on a particular point, we may treat it as forfeited. (*Blizzard Energy, Inc. v. Schaefers* (2021) 71 Cal.App.5th 832, 856; see also *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived."].) Moreover, the appellant must state each point under a separate heading or subheading in the opening brief, and issues not clearly identified

9

by a heading or subheading are forfeited. (*Pizzaro v. Reynoso* (2017) 10 Cal.App.5th 172, 179.)

As we have noted, the trial court clearly ruled that res judicata bars the claims asserted by Sanchez in counts 1, 2, 5, 6, and 7. In her opening brief, however, Sanchez does not mention or discuss the trial court's res judicata ruling. She has provided no argument and cited no case authority in her opening brief addressing whether and how res judicata applies to each of her claims, nor has she included any argument heading on the issue. Aside from making a single passing reference to res judicata (without citing any authority) when arguing that she adequately pled a Bane Act violation, Sanchez's opening brief does not address the trial court's findings on the issue, does not identify or discuss the elements of res judicata, and does not demonstrate how the trial court supposedly erred in applying the doctrine. Sanchez briefly addresses res judicata in her reply brief when discussing her writ of mandate and declaratory relief claims, but "[w]e do not consider points raised for the first time in the reply brief absent a showing of good cause for the failure to present them before." (*Bruno v. Hopkins* (2022) 79 Cal.App.5th 801, 822.)

Accordingly, we conclude that Sanchez has forfeited any challenge to the trial court's res judicata ruling as to counts 1, 2, 5, 6, and 7.[5] (See *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125

___

[5] We deny Sanchez's post-argument request to file a supplemental brief on privity because we are not deciding the appeal based on the merits of any issue regarding privity. Sanchez may not challenge the trial court's res judicata ruling for the first time at oral argument or in a supplemental brief after the case was argued and submitted. (See *BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc.* (2004) 119 Cal.App.4th 848, 854 [refusing to consider "an issue not mentioned in the briefs and raised for the first time at oral argument" and denying appellant's "request to file a postargument supplemental brief to raise this issue"].)

[failure to discuss one of several alternative grounds for summary judgment in opening brief forfeited issue for appeal and required affirmance of summary judgment ruling].) Thus, we need not decide any of the alternative grounds relied on by the trial court for dismissing these five claims. We therefore turn to the two remaining claims which the trial court did not dispose of on res judicata grounds: negligence and assault and battery.

II

As to her negligence claim, Sanchez contends the trial court erred by finding that it was barred by statutory immunities contained in sections 815.2, 820.2, and 845. Because we conclude that discretionary act immunity under section 820.2 applies to Sanchez's negligence claim, we need not decide whether section 845 immunity applies, and we affirm the trial court's grant of demurrer.

*A. Governing Law*

Section 815.2 provides, in relevant part, that a public entity can be held liable for injury proximately caused by its employee unless the employee is immune from liability. (§ 815.2, subds. (a) & (b).)

Section 820.2 provides that, "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." In determining whether a public employee's act is "discretionary" under section 820.2, courts distinguish between the employee's *operational* and *policy* decisions. (See *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 981 (*Caldwell*).) Immunity is reserved for " '*basic policy decisions* [which have] . . . been [expressly] committed to coordinate branches of government,' and as to which judicial

11

interference would thus be 'unseemly.' " (*Ibid.*, quoting *Johnson v. State* (1968) 69 Cal.2d 782, 793 (*Johnson*).)

On the other hand, "there is no basis for immunizing lower-level, or 'ministerial,' decisions that merely implement a basic policy already formulated. [Citation.] Moreover, . . . immunity applies only to *deliberate and considered* policy decisions, in which a '[conscious] balancing [of] risks and advantages . . . took place." (*Caldwell*, *supra*, 10 Cal.4th at p. 981, quoting *Johnson*, *supra*, 69 Cal.2d at pp. 794, fn. 8 & 796.) The burden of proof to show that discretionary immunity applies is on the public entity claiming the immunity. (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 794 ["to avail itself of the discretionary immunity provided by section 820.2, a public entity must prove that the employee, in deciding to perform (or not to perform) the act which led to plaintiff's injury, *consciously exercised discretion* in the sense of assuming certain risks in order to gain other policy objectives"].)

On appeal from an order sustaining a demurrer, we assume all properly pled material facts are true, but not contentions, deductions, or conclusions of fact or law. (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 528; *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) We independently review the trial court's ruling and determine de novo whether the complaint alleges facts sufficient to state a cause of action. (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768.) When the trial court sustains a demurrer without leave to amend, " 'we review the trial court's result for error, and not its legal reasoning.' " (*Morales v. 22nd Dist. Agricultural Assn.* (2018) 25 Cal.App.5th 85, 93, internal quotation marks omitted.)

*B. Analysis*

Sanchez's complaint alleges that the City is vicariously liable for the actions of SDPD officers based on the following theories of negligence: (1) the officers' breach of "a duty to not declare an 'unlawful assembly' when it can instead protect the First Amendment rights of demonstrators by arresting violent actors"; and (2) the officers' breach of "a duty not to enforce an 'unlawful assembly' declaration in a discriminatory manner, only against one side of a dispute."[6] We conclude that because the responsible SDPD personnel are entitled to discretionary act immunity for their allegedly negligent acts under section 820.2, the City as their employer cannot be held vicariously liable for their conduct. (§ 815.2, subd. (b).)

"Discretionary immunity under *section 820.2* has been found to apply to many areas of police work. Courts have found the following to constitute discretionary decisions for which police officers are immune under *section 820.2*: (1) the decision to pursue a fleeing vehicle [citations]; (2) the decision to investigate or not investigate a vehicle accident [citation]; (3) the failure to make an arrest or to take some protective action less drastic than arrest [citation]; (4) the decision whether to use official authority to resolve a dispute [citation]; and (5) the decision whether to remove a stranded vehicle [citations]." (*Conway v. County of Tuolumne* (2014) 231 Cal.App.4th 1005, 1015, italics added (*Conway*).)

"Police officers, however, are not immune under *section 820.2* when their acts are ministerial or public policy dictates against immunity. Accordingly, courts have determined discretionary immunity does not apply to the following: (1) an officer's conduct of an accident investigation after the

---

[6] We express no opinion on whether these theories state a valid claim for negligence, or whether they merely restate in negligence language the First Amendment claims plaintiffs asserted in federal court.

officer made the discretionary decision to undertake the investigation [citations]; (2) arresting the wrong person while executing a warrant [citation]; (3) deciding to arrest an individual when there was no probable cause to do so [citations] and (4) using unreasonable force when making an arrest or overcoming resistance to it [citation]." (*Conway*, *supra*, 231 Cal.App.4th at p. 1015, italics added.)

In *Conway*, the court found that discretionary act immunity barred liability for a SWAT team's decision to use tear gas to apprehend an armed suspect who was believed to be holed up inside a house. The court explained: "As our Supreme Court has noted: 'The decision, requiring as it does, comparisons, choices, judgments, and evaluations, comprises the very essence of the exercise of "discretion" and we conclude that such decisions are immunized under *section 820.2*.' " (*Conway*, *supra*, 231 Cal.App.4th at p. 1018, italics added.) "The arrest of a suspected armed assailant mandates decisions affecting public safety; liability for such split-second decisions conceivably could hamstring officials with unpleasant results." (*Id*. at p. 1020.) "We hold only that, given the importance of the decisions involved and the potential impact of liability on these decisions, *section 820.2* provides immunity for the officers' actions here under the authority of *Caldwell*." (*Ibid*.)

We acknowledge that the line between discretionary policy decisions and non-immune ministerial or operational decisions is often blurry and difficult to discern. In this case, however, we conclude that the police actions challenged by plaintiffs fall on the immunity side of the line. According to the complaint, the challenged law enforcement decisions to declare an unlawful assembly, direct remaining anti-Trump protestors down Harbor Drive, and arrest those who did not disperse, were all made by the incident

14

commanders at Petco Park, who were charged with making tactical decisions for keeping the peace and preventing violence between two hostile groups—while balancing their legitimate exercise of First Amendment rights. No less than the decision to employ tear gas in *Conway*, these were deliberate and considered policy decisions by commanders responsible for protecting public safety. As in *Conway*, these policy decisions required the exercise of judgment, conscious balancing of risks and benefits, and choices between competing strategies for responding to developing events on the ground. These are the type of discretionary policy decisions that the Legislature has placed beyond judicial scrutiny, so that they can be made without being influenced by the threat of personal liability. (*Conway*, *supra*, 231 Cal.App.4th at p. 1020.)

Although enforcement of the unlawful assembly order was inherently an "invasion of the personal liberty of at least some of those present[,]" such intrusions are " 'a regular and necessary part of police work conducted for the preservation of public safety and order,' and the decision to use this official authority on any particular occasion 'is peculiarly a matter of judgment and discretion' for which the officers (and [their employer]) may not be held liable in tort. [Citations.]" (*Watts v. County of Sacramento* (1982) 136 Cal.App.3d 232, 235 [holding that officers who ordered plaintiff to leave owner's property on threat of arrest were entitled to discretionary act immunity].) Moreover, " '[a] decision to arrest or to take some protective action less drastic than arrest, is an exercise of discretion for which a peace officer may not be held liable in tort.' " (*Id.* at p. 234, quoting *McCarthy v. Frost* (1973) 33 Cal.App.3d 872, 875.)

While courts have found that immunity does not protect officers from liability for using excessive force or making false arrests (see, e.g.,

15

*Koussaya v. City of Stockton* (2020) 54 Cal.App.5th 909, 932; *Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1048, 1051), Sanchez alleged a separate false imprisonment claim based on her allegedly false arrest, but the trial court ruled that it was barred by res judicata. (See *Asgari v. City of Los Angeles* (1997) 15 Cal.4th 744, 752, fn. 3 [" '[F]alse arrest' and 'false imprisonment' are not separate torts. False arrest is but one way of committing a false imprisonment . . . ."], internal quotation marks omitted.) Because Sanchez has not properly challenged the res judicata ruling on appeal, she cannot now assert a violation of the same primary right as a basis for her negligence claim. (See *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797–798 [res judicata applies to causes of action arising out of the same primary right, regardless of the legal theory advanced].)

Finally, plaintiffs' allegations of viewpoint discrimination do not defeat the immunity. Under section 820.2, when law enforcement commanders are responding to a volatile situation involving antagonistic groups of protesters with opposing viewpoints, they must remain free to exercise their professional judgment to choose the best course of action for keeping the groups separated, preventing violence and property destruction, and ensuring public safety. "[G]iven the importance of the decisions involved and the potential impact of liability on these decisions" (*Conway, supra,* 231 Cal.App.4th at p. 1020), decision-makers should not have to fear that exercising their discretion in a manner that may affect the groups differently, such as by directing one group to a particular location or arresting its members for criminal acts, will expose them and their employer to liability for alleged viewpoint discrimination. Thus, plaintiffs' claim of viewpoint discrimination does not overcome discretionary act immunity. (See also *Caldwell, supra,* 10 Cal.4th at pp. 984–989 [claim of age discrimination in

16

violation of Fair Employment and Housing Act did not defeat discretionary act immunity].)

Accordingly, we affirm the trial court's finding that section 820.2 immunity barred Sanchez's negligence claim. We do not, and need not, decide whether section 845 immunity also applies.[7]

III

Lastly, we turn to Sanchez's remaining claim for assault and battery. Sanchez argues that the trial court erred by finding that her government claim form did not adequately reflect a cause of action for assault and battery. We disagree.

Section 945.4 provides that "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with . . . Section 910 . . . until a written claim therefore has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board . . . ." Section 910 requires that the claim state the "date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted" and provide "[a] general description of the . . . injury, damage or loss incurred so far as it may be known at the time of presentation of the claim." (See *Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority* (2004) 34 Cal.4th 441, 445 (*Stockett*).)

The purpose of these requirements is " 'to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. [Citation.]' "

---

7    Section 845 provides immunity to public entities and public employees for failure to establish a police department, failure to provide police protection service, or failure to provide sufficient police protection service.

17

(*Stockett*, *supra*, 34 Cal.4th at p. 446.) "[T]he claims statute 'should not be applied to snare the unwary where its purpose has been satisfied' [Citation]." (*Ibid*.) The claim notice need not specify each particular act or omission later proven to have caused the injury, and a complaint's fuller exposition of the factual basis is not fatal, so long as the complaint is not based on an "entirely different set of facts." (*Id*. at p. 447.) However, if a plaintiff "relies on more than one theory of recovery against the [governmental agency], each cause of action must have been reflected in a timely claim. In addition, the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint." (*Dixon v. City of Livermore* (2005) 127 Cal.App.4th 32, 40.) "[E]ven if the claim were timely, the complaint is vulnerable to a demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim." (*Nelson v. State of California* (1982) 139 Cal.App.3d 72, 79.)

Sanchez's claim, in relevant part, stated as follows:

> "PLEASE TAKE NOTICE that claimant Nancy Sanchez hereby claims damages against Respondents exceeding $25,000 for [her] false arrest and overnight imprisonment on May 27, 2016 at approximately 6:30 p.m. by riot police who declared that no free speech was allowed by anyone who had been seen near a Donald Trump protest that evening, and who continued marching all the way into Barrio Logan and arresting anyone who did not flee quickly enough."

We conclude that Sanchez's claim did not fairly reflect a cause of action for assault and battery. She alleged in her complaint that "Defendants touched, or caused Plaintiffs to be touched, with the intent of harming or offending them, or caused Plaintiffs to reasonably believe that Defendants would touch them with the intent of harming or offending them." But her government claim form made no mention of harmful or offensive contact, the

18

threat of such contact, or any resulting injury. Her claim alleged damages exceeding $25,000, but there was no description of the nature of those damages or what caused them, aside from "false arrest and overnight imprisonment." (Cf. *Connelly v. County of Fresno* (2006) 146 Cal.App.4th 29, 39 (*Connelly*) [finding sufficient notice was given of personal injuries suffered in an accident where claim specified that damages included " 'medical, lost income, future medical' "].) The focus of Sanchez's claim was false arrest and infringement on her civil rights, with no mention of excessive force or any physical harm.

Although arrests typically involve physical contact, to conclude that every arrest carries with it an inherent factual basis for an assault or battery cause of action would unduly lower the threshold of what section 910 requires. Courts have recognized that an officer's " 'right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.' [Citation.]" (*Golick v. State of California* (2022) 82 Cal.App.5th 1127, 1138–1139.) Thus, a peace officer " 'may use *reasonable* force to make an arrest, prevent escape or overcome resistance, and need not desist in the face of resistance.' " (*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 527, italics added.) Besides alleging false arrest, Sanchez's claim did not allege any *unreasonable* use of force, or any other facts that would give rise to an assault or battery claim.

"The line between causes of action fairly reflected in, or absent from, a government claim is – like so many things in the law – highly context dependent." (*Plata v. City of San Jose* (2022) 74 Cal.App.5th 736, 749 (*Plata*).) In some contexts, such as claims involving car accidents, personal injury may be an inherent or obvious part of the suit even if it is not explicitly included in the claim. (See, e.g., *Connelly, supra*, 146 Cal.App.4th at p. 41

19

[". . . this claim, namely one based on an automobile accident, . . . would be expected to involve both property damage and personal injuries"].)  Here, we conclude that the claim's statement that police officers "marched into Barrio Logan" and arrested Sanchez, without more, does not "fairly describe" an assault or battery.  (See *Plata*, at p. 748 [concluding plaintiff's government claims failed to "fairly describe" a new cause of action included in the complaint].)  Accordingly, we affirm the trial court's order granting the City's demurrer as to Sanchez's assault and battery claim.

## DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.


BUCHANAN, J.

WE CONCUR:


HUFFMAN, Acting P. J.


KELETY, J.

20