Filed 8/14/17 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| GLENN TOWERY, | B269387 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC534872) |
| v. | |
| STATE OF CALIFORNIA et al., | ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |
| Defendants and Respondents. | |


THE COURT:

It is ordered that the opinion filed herein on August 10, 2017, and certified for publication in the Official Reports be modified as follows:

On page 5 of the as-filed opinion, last sentence of the second full paragraph, the word "denied" is changed to "overruled" so the sentence reads:

> The trial court sustained the demurrer with respect to Towery's federal civil rights claim and overruled it with respect to the Bane Act claim.

> There is no change in the judgment.


CHANEY, Acting P. J.          JOHNSON, J.          LUI, J.

Filed 8/10/17 (unmodified version)
**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| GLENN TOWERY, | B269387 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC534872) |
| v. | |
| STATE OF CALIFORNIA et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Los Angeles County.  Stuart M. Rice, Judge.  Affirmed.

Desai Law Firm, Aashish Y. Desai and Adrianne De Castro for Plaintiff and Appellant.

Xavier Becerra, Attorney General, William C. Kwong, Acting Senior Assistant Attorney General, Thomas S. Patterson, Jay C. Russell and Jon S. Allin, Supervising Deputy Attorneys General, and Jill Vander Borght, Deputy Attorney General, for Defendants and Respondents.

_____

Plaintiff and appellant Glenn Towery brought this action alleging claims for damages against various defendants arising from his contraction of coccidioidomycosis (commonly known as valley fever) while incarcerated in the Kern Valley State Prison. After several iterations of his complaint, the remaining defendants—respondents in this appeal—are the State of California and the California Department of Corrections and Rehabilitation (collectively, the State). Towery is African-American, and alleges that the State assigned him to the Kern Valley prison and failed to take preventative measures against valley fever, despite knowing that Kern Valley is a high risk area for the disease and that African-Americans are more susceptible to contracting a serious version of it. The only remaining cause of action at issue in this appeal is Towery's claim under the Bane Act (Civ. Code, § 52.1), which creates a claim for an individual whose constitutional rights have been violated through "threat, intimidation, or coercion." (Civ. Code, § 52.1, subds. (a)–(b).)

The trial court granted judgment on the pleadings against Towery on his Bane Act cause of action on the ground that the State is immune from liability under Government Code section 844.6.[1] We affirm. Under section 844.6, subject to some statutory exceptions not relevant here, a public entity is not liable for "[a]n injury to any prisoner." (§ 844.6, subd. (a)(2).) The Bane Act does not create any exception to this rule. Thus, regardless of the merits of Towery's claim, he may not assert it against the State.

---

[1] Subsequent undesignated statutory references are to the Government Code.

2

## BACKGROUND

### 1.    *Factual Allegations*[2]

Valley fever is an infectious disease contracted by inhaling an airborne fungus present in various areas of the Southwestern United States.  The disease causes serious illness in less than 5 percent of persons who are infected.  However, the serious, "disseminated" version of the illness can result in debilitating conditions, such as bone and joint infections, skin disease, soft tissue abscesses, and meningitis.  If untreated, the disease is fatal once it progresses to meningitis.

Epidemiological studies have shown that, for unknown reasons, certain races are at higher risk of developing the disseminated version of the disease.  The risk for African-Americans is 10 times greater than for the general population.  From 1991 to 1993, 70 percent of the reported cases of valley fever in California occurred in Kern County.

In 2006, the State Department of Public Health published a formal study on valley fever and recommended various preventative measures.  The majority of those measures were not implemented in any State prison facility.  Then, in April 2013, the federal receiver that is currently overseeing the state prison system issued a policy that directs California prisons to exclude all inmates who are at a higher risk of contracting valley fever, including African-American inmates.  The stated reason for the receiver's analysis was because the State had " 'moved slowly' " to develop a reasonable plan to respond to the valley fever problem.

---

[2] Because this is an appeal from a judgment on the pleadings, we  accept the factual allegations in Towery's second amended complaint (SAC) as true.  (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515 (*Gerawan*).)

Towery was incarcerated in the Kern Valley State Prison from March 2009 to April 2013, when he was released. He first started experiencing symptoms of valley fever in about 2010, but the disease was not diagnosed until shortly after Towery was hospitalized in October 2012 for an enlarged heart. Towery continues to suffer from the disease. He must take daily medication. He is unable to exercise and is susceptible to illnesses such as pneumonia and flu. He suffered a seizure in January 2014.

Towery alleges that the State intentionally chose to take no action to protect African-American inmates against valley fever despite knowing that they are at disproportionate risk of contracting the serious form of the disease. He claims that the State's alleged intentional course of conduct occurred "in connection with a well-documented history [of] race-based policymaking and discrimination," and that the State chose inaction "because of, not merely in spite of, the fact that [Towery] was African-American."

## 2. *Procedural History*

Towery filed his initial complaint on January 31, 2014. It alleged four causes of action: (1) failure to provide inmate with safe or habitable prison; (2) premises liability; (3) negligent assignment to prison facility; and (4) unfair business practices. The State filed a demurrer raising various defenses, including public entity immunity under sections 815 and 844.6. The trial court sustained the demurrer on the basis of the immunity statutes, with leave to amend the first three causes of action.

Towery filed a first amended complaint (FAC) on December 19, 2014. The FAC included the first three causes of action from the initial complaint as well as two additional causes

4

of action for: (1) alleged deprivation of constitutional rights under color of state law (42 U.S.C. § 1983); and (2) alleged violation of the Bane Act (Civ. Code, § 52.1). The State again demurred, and the trial court again sustained the demurrer with leave to amend.

Towery filed his SAC on April 2, 2015. The SAC dropped Towery's first three causes of action and realleged his federal civil rights and Bane Act claims.

The State again demurred. With respect to the federal civil rights claim, the State argued that it was not a "person" that could be subject to liability (see 42 U.S.C. § 1983; *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 829 (*Venegas I*)), and that Towery lacked standing to pursue injunctive relief because he was no longer an inmate. With respect to the Bane Act claim, the State argued that Towery's SAC did not allege facts amounting to "threats, intimidation or coercion." (Civ. Code, § 52.1, subd. (a).) The trial court sustained the demurrer with respect to Towery's federal civil rights claim and denied it with respect to the Bane Act claim.

The State then filed motions for summary judgment and for judgment on the pleadings. In its motion for judgment on the pleadings, the State argued that the immunity for public entities under section 844.6 applied to Towery's Bane Act claim, and that its motion was procedurally proper because it had not previously raised the issue of immunity with respect to that claim.

The trial court granted the motion for judgment on the pleadings and entered a final judgment on December 22, 2015.

## DISCUSSION

### 1. *Standard of Review*

A trial court's ruling granting judgment on the pleadings is "equivalent to a demurrer and is governed by the same standard of review." (*Mack v. State Bar* (2001) 92 Cal.App.4th 957, 961.) We review the trial court's ruling independently, accepting Towery's factual allegations as true and giving them a liberal construction. (*Gerawan, supra,* 24 Cal.4th at p. 515.)

Here, Towery's appeal raises a question of statutory interpretation: Whether the immunity for public entities provided under sections 815 and 844.6 applies to a claim under the Bane Act (Civ. Code, § 52.1). We independently decide that issue as a matter of law. (See *Nelson v. State of California* (1982) 139 Cal.App.3d 72, 80–81.)

### 2. *The Bane Act (Civ. Code, § 52.1) Does Not Provide an Exception to the State's Immunity for Conduct That Allegedly Injured Towery*

Section 815, subdivision (a) states that, unless an exception is otherwise provided by statute, a "public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."[3] Under this section, "in the absence of some constitutional

---

[3] Section 815 was part of the Tort Claims Act (the Act, § 810 et seq.). The Act followed our Supreme Court's decision in *Muskopf v. Corning Hospital Dist.* (1961) 55 Cal.2d 211, which "abolished the doctrine of governmental tort immunity." (*Williams v. Horvath* (1976) 16 Cal.3d 834, 838.) The intent of the Act "is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances: immunity is waived only if the various requirements of the act are satisfied." (*Ibid.*)

requirement, public entities may be liable *only* if a statute declares them to be liable." (*Cochran v. Herzog Engraving Co.* (1984) 155 Cal.App.3d 405, 409.) Thus, in California "sovereign immunity is the rule" and "governmental liability is limited to exceptions specifically set forth by statute." (*Ibid.*)

Consistent with this principle, a statute of general application that merely creates a liability applicable to public entities is not sufficient to override a specific immunity provision. That is because "the very purpose of the Act is to afford categories of immunity where, but for its provisions, public agencies or employees would otherwise be liable under general principles of law." (*Caldwell v. Montoya* (1995) 10 Cal.4th 972, 985 (*Caldwell*).) Thus, under the Act, specific immunities prevail over general rules of actionable duty. (*Ibid.*) This priority is reflected in section 815, subdivision (b), which states that "[t]he liability of a public entity established by this part . . . is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person."

Section 844.6 is a specific immunity provision that applies to injuries to prisoners. Subject to some specific statutory exceptions, section 844.6, subdivision (a)(2) provides that a public entity is not liable for "[a]n injury to any prisoner."[4]

---

[4] The full text of section 844.6, subdivision (a) is: "Notwithstanding any other provision of this part, except as provided in this section and in Sections 814, 814.2, 845.4, and 845.6, or in Title 2.1 (commencing with Section 3500) of Part 3 of the Penal Code, a public entity is not liable for: [¶] (1) An injury proximately caused by any prisoner. [¶] (2) An injury to any prisoner."

Towery does not argue that any of the specific statutory exceptions apply here.[5]  Thus, under the plain language of sections 815 and 844.6, the State cannot be liable for Towery's alleged injuries.  No other statute contradicts this conclusion.

### a. ***The Bane Act does not override statutory immunities***

Initially, nothing in the language of the Bane Act indicates that it creates even a general rule of actionable duty for public entities.  Civil Code section 52.1, subdivision (b) provides a

---

[5] One of the statutory exceptions to Government Code section 844.6 is section 814, which states that "[n]othing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee."  Towery's SAC included injunctive relief in the prayer.  However, the only discussion of injunctive relief in the body of the SAC is in connection with Towery's 42 United States Code section 1983 claim, which he has not pursued on appeal.  In any event, in opposing the State's motion for judgment on the pleadings Towery did not argue that he asserts any claim for an injunction under Civil Code section 52.1 that is subject to an exclusion from public entity immunity under Government Code section 814.  On appeal, although he quarrels with some unidentified holding of the trial court that he lacks standing to seek injunctive relief to assert the constitutional rights of others, he does not place that argument in any context concerning Government Code section 844.6 immunity.  We therefore treat any argument under Government Code section 814 as forfeited.  (*Planned Protective Services, Inc. v. Gorton* (1988) 200 Cal.App.3d 1, 13, disapproved on other grounds in *Martin v. Szeto* (2004) 32 Cal.4th 445, 451, fn. 7; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)  Towery provides no other "cogent legal argument" for his constitutional claim on appeal, and we therefore do not consider it.  (*Falcone,* at p. 830.)

damage claim for any "individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a)." Subdivision (a) in turn applies "[i]f a *person or persons*, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation or coercion, with the exercise or enjoyment by any individual or individuals" of constitutional rights. (Civ. Code, § 52.1, subd. (a), italics added.) The section does not define "person." However, section 14 of the Civil Code states that, as used in that code, "the word person includes a corporation as well as a natural person." Thus, Civil Code section 52.1 does not on its face provide any claim against the State itself.

Nor does Towery allege claims against a specific State employee or employees for which the State might be vicariously liable as an employer.[6] (See, e.g., *O'Toole v. Superior Court* (2006) 140 Cal.App.4th 488, 493, 509 (*O'Toole*) [plaintiffs' Bane Act claim against a community college district was based on the conduct of police officers employed by the district that allegedly deprived plaintiffs of their First Amendment rights].) Towery's claim is against the State only.

---

[6] Section 815.2, subdivision (a) provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."

9

Most important, any general theory of liability against public entities is subordinate to the specific immunity provision for injuries to prisoners in section 844.6. As discussed above, "[i]f a specific immunity statute applies, it 'cannot be abrogated by a statute which simply imposes a general legal duty or liability.' " (*Creason v. Department of Health Services* (1998) 18 Cal.4th 623, 635, quoting *Caldwell, supra,* 10 Cal.4th at p. 986.) For example, in *Caldwell,* the plaintiff sued a school board and individual board members under the California Fair Employment and Housing Act (FEHA; § 12900 et seq.) for allegedly dismissing him as district superintendent on racial grounds. (*Caldwell, supra,* 10 Cal.4th at p. 976.) The court noted that the FEHA includes " 'the state or any political or civil subdivision thereof' " in the definition of an employer that is subject to the FEHA, and assumed that the "FEHA imposes individual tort liability on both public and private employees who cause or assist their covered 'employers' to violate the statute." (*Id.* at pp. 978–979, fn. 3.) The court nevertheless concluded that the FEHA claim could not proceed against the individual defendants because of the specific immunity provision in section 820.2, which applies to the exercise of discretion by a public employee.[7]

Make no mistake, we recognize the human and social significance of this case; however, we are bound by the law. Civil Code section 52.1 does not address the immunity established by Government Code section 844.6. Nothing in Civil Code section 52.1 indicates an intent to abrogate this specific immunity

---

[7] The issue of whether the district itself was immune from liability under a direct FEHA claim against it was not before the court, and the court therefore did not decide it. (*Caldwell, supra,* 10 Cal.4th at p. 989, fn. 9.)

provision.  The immunity that it creates therefore applies to Towery's Bane Act claim.  (See *Caldwell, supra,* 10 Cal.4th at p. 986 [the specific immunity provided by Government Code section 820.2 "cannot be abrogated by a statute which simply imposes a general legal duty or liability on persons, including public employees"].)[8]

Government Code section 844.6 provides an even stronger case than the immunity provision at issue in *Caldwell* for the conclusion that it prevails over any statute, such as Civil Code section 52.1, that simply establishes a general legal duty or liability.  (See *Caldwell, supra,* 10 Cal.4th at p. 986.)  Unlike Government Code section 820.2, section 844.6 does not contain the general statement that it applies "[e]xcept as otherwise provided by statute."  (Gov. Code, § 820.2.)  Rather, Government Code section 844.6 contains a more limited exception, stating that it applies "except as provided in this section" and in several other specific statutes.  (See Gov. Code, § 844.6, subd. (a).)  Thus, Government Code section 844.6 does not leave any ambiguity about its applicability to a claim against a public entity under some other statute, such as Civil Code section 52.1, that simply creates a general legal duty.

---

[8] Section 844.6 also precludes any theory of vicarious liability against the State under the Bane Act, even if Towery had alleged such a theory.  Section 844.6, subdivision (d) provides that "[n]othing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission."  However, except for medical malpractice claims, a public entity "may *but is not required to* indemnify any public employee, in any case where the public entity is immune from liability under this section."  (§ 844.6, subd. (d), italics added.)

Several courts have concluded that Civil Code section 52.1 does not abrogate other specific immunity provisions.  In *O'Toole,* the court held that the specific immunity provided by Government Code section 820.6 for good faith conduct under the apparent authority of an unconstitutional enactment precluded a claim against community college law enforcement officers. (*O'Toole, supra,* 140 Cal.App.4th at p. 504.)  The officers had enforced an allegedly unconstitutional campus permit requirement for distributing literature.  (*Id.* at pp. 501–502.)  The court cited *Caldwell* and other authority for the "general rule" that a statutory immunity overrides a statute imposing liability, and concluded that "Civil Code section 52.1 contains no indicia reflecting an intent that public employees may be sued despite a statutory immunity that would otherwise apply."  (*Id.* at p. 504.)

In *County of Los Angeles v. Superior Court* (2009) 181 Cal.App.4th 218, the court concluded that the immunity provided to public employees under Government Code section 821.6 for "instituting or prosecuting any judicial or administrative proceeding" precluded a claim under the Bane Act for alleged wrongful seizure and retention of property.  (§ 821.6; *County of Los Angeles*, at pp. 222, 231.)  Citing *O'Toole,* the court rejected the plaintiffs' contention that "Civil Code section 52.1 prevails over the Government Code section 821.6 immunity."  (*Id.* at p. 231; *O'Toole, supra,* 140 Cal.App.4th at p. 504.)

Towery's reliance on *Venegas v. County of Los Angeles* (2007) 153 Cal.App.4th 1230 (*Venegas II*) is misplaced.  That case concerned claims against police officers and the County of Los Angeles under 42 United States Code section 1983 (hereafter U.S.C. section 1983) and the Bane Act based upon an allegedly unlawful detention and a warrantless search.  (*Id.* at pp. 1238–

12

1240.) The court rejected the defendants' claim that the "qualified immunity" afforded to public officers for alleged violations of U.S.C. section 1983 also applies to state law claims under the Bane Act.[9] The court noted that qualified immunity is a feature of federal law that was created by the United States Supreme Court. (*Venegas II*, at p. 1242.) The court found no basis in the legislative history of Civil Code section 52.1 to conclude that the Legislature intended the federal doctrine of qualified immunity to apply to claims under that section. (*Id.* at pp. 1243–1244.)

*Venegas II* is not relevant here, as it dealt specifically with judicially created qualified immunity under federal law and not with statutory immunity under California law. The court distinguished *O'Toole*, *supra*, 140 Cal.App.4th 488*,* and other cases that applied *statutory* immunities under California law, and expressly stated that "we have no occasion to determine whether a statutory immunity might apply here." (*Venegas II*, *supra*, 153 Cal.App.4th at p. 1246; *id.* at p. 1243.)

Towery nevertheless argues that *Venegas II* supports the conclusion "that Section 52.1 does not provide immunity to governmental agents" because, in concluding that qualified immunity did not apply to the plaintiffs' Bane Act claims in that case, the court relied in part on the fact that the California

---

[9] The court explained that the current scope of this qualified immunity "shields a public officer from an action for damages under 42 United States Code section 1983 unless the officer has violated a 'clearly established' constitutional right." (*Venegas II, supra,* 153 Cal.App.4th at pp. 1241–1242, quoting *Saucier v. Katz* (2001) 533 U.S. 194, 201, overruled on other grounds in *Pearson v. Callahan* (2009) 555 U.S. 223.)

13

Legislature knows how to create governmental immunity when it wants to do so. That argument does not help Towery because the Legislature *did* create the statutory immunities at issue here. The relevant question is not whether Civil Code section 52.1 itself provides immunity, but whether that section creates an exception to the statutory immunity that otherwise expressly applies. Nothing in *Venegas II* supports the conclusion that Civil Code section 52.1 creates such an exception.[10]

> ### b. *Section 844.6 immunity is not limited to "ordinary" tort claims*

Towery argues that the legislative history of Government Code section 844.6 indicates that the Legislature intended it to apply only to "ordinary" torts such as wrongful death and not to alleged hate crimes under Civil Code section 52.1. As discussed above, there is no ambiguity in the language of Government Code section 844.6 concerning its scope. There is therefore no reason to resort to legislative history to determine whether it applies to Towery's claim. (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 ["If there is no [statutory] ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs"].)

---

[10] Towery also cites *Doe v. Petaluma City Sch. Dist.* (N.D.Cal. 1993) 830 F.Supp. 1560. Like the court in *O'Toole,* we do not find the opinion in *Petaluma* persuasive. The district court in that case relied on the language in Civil Code section 52.1, subdivision (a), stating that individuals may be liable "whether or not acting under color of law." (*Petaluma*, at p. 1582; Civ. Code, § 52.1, subd. (a).) However, as the court concluded in *O'Toole,* this language simply means that the Legislature intended the Bane Act to apply to private as well as public actors. (See *O'Toole, supra,* 140 Cal.App.4th at pp. 504–505.)

14

In any event, Towery's legislative history argument is not persuasive. Citing *Reed v. City & County of San Francisco* (1965) 237 Cal.App.2d 23 (*Reed*) and *Lowman v. County of Los Angeles* (1982) 127 Cal.App.3d 613 (*Lowman*), Towery argues that the purpose of section 844.6 is to "allow the orderly administration of the prison system and to immunize governmental entities [from] wrongful death actions; not from hate crimes." Neither of those cases supports the limitation that Towery suggests.

*Reed* held that section 844.6 was constitutional, rejecting the argument of the plaintiff (a prisoner) that there was no reason to classify prisoners differently from other citizens who might have a claim against a public entity. The court found such a reason in the fact that "[i]mposition of liability in cases such as this would increase the cost of law enforcement and add to the difficulties of orderly prison administration." (*Reed, supra,* 237 Cal.App.2d at p. 25.) Nothing in that finding suggests that the Legislature intended to limit public entity immunity to only some categories of prisoner claims.

*Lowman* simply held that the immunity established by section 844.6 applied to wrongful death claims by a prisoner's heirs as well as to injury claims by prisoners. (*Lowman, supra,* 127 Cal.App.3d at pp. 615–617.) The court's holding that section 844.6 immunity *includes* wrongful death claims does not mean that it is *limited* to wrongful death or other "ordinary" tort claims, nor did the court suggest any such limit.

We therefore reject Towery's argument that the Legislature intended to exclude claims under Civil Code section 52.1 from the public entity immunity provided by Government Code section 844.6. If the Legislature had intended such an exclusion, it could have explicitly said so when enacting the Bane Act, either by

15

including such a provision in that act or by amending Government Code section 844.6.  It did not do so, and we therefore give effect to the plain language of Government Code section 844.6.

## DISPOSITION

The judgment is affirmed.  The State is entitled to its costs on appeal.

CERTIFIED FOR PUBLICATION.


LUI, J.

We concur:


CHANEY, Acting P. J.


JOHNSON, J.