Filed 03/7/25  Jenkins v. Department of Justice CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DANIEL JENKINS, Plaintiff and Appellant, v. DEPARTMENT OF JUSTICE et al., Defendants and Respondents. | F087260 (Super. Ct. No. 22CECG02260) **OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Kristi Culver Kapetan, Judge.

Jeremy M. Dobbins for Plaintiff and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Assistant Attorney General, Miguel A. Neri and Graham C. Mills, Deputy Attorneys General, for Defendants and Respondents.

-ooOoo-

Plaintiff Daniel Jenkins appeals from a November 16, 2023 judgment of dismissal entered in favor of defendants Department of Justice (DOJ) and Department of the California Highway Patrol (CHP) following an order sustaining a demurrer without leave to amend. In the operative complaint,[1] Jenkins alleged disability discrimination and discriminatory hiring practices in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code,[2] § 12900 et seq.). In view of section 855.6, which grants immunity to public entities and public employees for failing to perform physical or mental examinations, we conclude the demurrer was properly sustained and affirm the judgment.

## BACKGROUND

"Because this appeal arises from a dismissal following a demurrer, we rely on [the operative] complaint . . . for a summary of the factual background. We accept as true all properly pleaded allegations without concern for proof problems." (*Gordon v. Law Offices of Aguirre & Meyer* (1999) 70 Cal.App.4th 972, 975, fn. 2.)

Jenkins applied for the position of DOJ special agent. He passed a written exam in May 2015, passed a physical agility test in June 2015, and completed an oral interview in August 2015. Between September and October 2015, a background check and polygraph test were performed. In December 2015, Jenkins received a conditional job offer. In January 2016, he was evaluated by an occupational therapist. Subsequently, per DOJ's instructions, Jenkins provided additional medical records. In March 2016, Dr. Hamel of the Department of Human Resources reviewed the foregoing records. She did not examine Jenkins in person and declined to consider an evaluation conducted by his

[1] Jenkins filed the original complaint on July 26, 2022. CHP filed a demurrer thereto on January 5, 2023. Following a June 8, 2023 hearing, the superior court sustained the demurrer with leave to amend. Jenkins filed an amended complaint, i.e., the operative complaint, on June 20, 2023.

[2] Unless otherwise indicated, subsequent statutory citations refer to the Government Code.

primary physician Dr. Perri.  On May 4, 2016, Jenkins received a final job offer.  That same day, however, the offer was rescinded.  On May 13, 2016, Jenkins was informed via letter he was medically disqualified due to a prior back injury.  Jenkins appealed the decision to the State Personnel Board, which "determined that Dr. Hamel's disqualification without permitting Mr. Jenkins to be evaluated by an independent physician warranted further medical exploration."  On February 2, 2017, the State Personnel Board set aside the disqualification.

Thereafter, Jenkins submitted Dr. Perri's second opinion, which was based on a physical examination.  Pursuant to Department of Human Resources' request, CHP's Dr. Zielinski reviewed Jenkins's medical records.  Dr. Zielinski did not examine Jenkins in person and did not comment on Dr. Perri's opinion.  In May 2017, Dr. Zielinski determined Jenkins was medically disqualified from DOJ employment because he "was at risk of further or future injury."  In a letter of medical disqualification, Dr. Zielinski stated " 'both the American Disabilities Act and Fair Employment and Housing Administration stipulate that employment decisions must be based on the person's ability to currently perform the job, not whether the person may be unable to perform the job at some point in the future' " (boldface omitted), but opined " 'there is an absolute risk of greater than 1% that Mr. Jenkins could sustain further injury to his back' " " 'resulting in an incapacitation' " (boldface omitted).

Jenkins sued defendants on the grounds he "was discriminated against due to a past medical condition and disability."  He raised two FEHA causes of action: (1) disability discrimination; and (2) discriminatory hiring practices.  Jenkins challenged the reliability of the medical disqualification finding, emphasizing Drs. Hamel and Zielinski "never actually examined [him]" and "only reviewed the provided records."

On August 17, 2023, defendants filed their demurrer, asserting—among other things—they were immune from Jenkins's causes of action under section 855.6.  They specified the complaint alleged Jenkins "had to submit to a medical examination as a part

3.

of his job application to be a DOJ special agent" but did not allege either "Dr. Hamel's or Dr. Zielinski's medical examination constituted medical treatment for him."

On November 7, 2023, a hearing was held on the demurrer. Thereafter, the superior court concluded defendants were immune under section 855.6 and filed an order sustaining the demurrer without leave to amend. The complaint was dismissed with prejudice and judgment was entered in favor of defendants on November 16, 2023.

## DISCUSSION[3]

### I.     Standards of review

"A demurrer tests the legal sufficiency of the complaint. [Citation.] On appeal from a judgment of dismissal following an order sustaining a demurrer, we examine the complaint de novo in order to ascertain 'whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose.' [Citation.] We give the complaint a reasonable interpretation, reading it as a whole and viewing its parts in context. [Citations.] We assume the truth of the properly pleaded factual allegations, facts that can be reasonably inferred from those pleaded, and facts of which judicial notice can be taken. [Citation.] But we do not assume the truth of pleaded contentions and legal conclusions. [Citations.] And we may disregard allegations which are contrary to law or to a fact of which judicial notice may be taken. [Citation.]" (*In re Social Services Payment Cases* (2008) 166 Cal.App.4th 1249, 1263.) On appeal, the plaintiff bears the burden of demonstrating the superior court erred in sustaining the demurrer. (*Esparza v. County of Los Angeles* (2014) 224 Cal.App.4th 452, 459 (*Esparza*).)

---

[3] In his opening brief, Jenkins makes intermittent remarks that could be construed as separate legal contentions. If they are, he forfeits them on appeal. First, these contentions lack their own headings or subheadings. (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179; see Cal. Rules of Court, rule 8.204(a)(1)(B).) Second, they are undeveloped. (See *Perry v. City of San Diego* (2021) 65 Cal.App.5th 172, 188, fn. 8; *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1.)

"Whether [an] immunity for public entities provided under [certain] sections . . . applies to a claim under [FEHA]" (*Towery v. State of California* (2017) 14 Cal.App.5th 226, 231 (*Towery*)) is "a question of statutory interpretation" (*ibid.*). " 'Questions of statutory interpretation, and the applicability of a statutory standard to undisputed facts, present questions of law, which we review de novo.' [Citation.]" (*California State University, Fresno Assn., Inc. v. County of Fresno* (2017) 9 Cal.App.5th 250, 265.)

## II. Analysis

### a. *Section 855.6 immunity applies to FEHA causes of action.*

A defendant may raise immunity as the basis for a demurrer. (See, e.g., *Caldwell v. Montoya* (1995) 10 Cal.4th 972 (*Caldwell*); *Esparza*, *supra*, 224 Cal.App.4th 452.) "An 'immunity' is '[a]ny exemption from a duty [or] liability . . . .' [Citation.] It ' "avoids liability in tort under all circumstances, within the limits of the immunity itself; it is conferred, not because of the particular facts, but because of the status or position of the favored defendant; and it does not deny the tort, but [rather] the resulting liability. . . ." [Citation.]' [Citation.] When the law grants an immunity, it does not mean that the defendant's conduct is not tortious, but rather that the defendant is absolved from liability." (*Blanks v. Seyfarth Shaw LLP* (2009) 171 Cal.App.4th 336, 378.) Generally, a court initially determines whether a defendant owes a duty to a plaintiff before it determines whether the former is immune. (See *Caldwell*, *supra*, at p. 978, fn. 3 [" 'duty before immunity' " doctrine].) However, the court may elect to proceed directly to the immunity issue on the grounds of expediency and judicial economy. (*Cruz v. Briseno* (2000) 22 Cal.4th 568, 572; *Caldwell*, *supra*, at p. 978, fn. 3; *Kisbey v. State of California* (1984) 36 Cal.3d 415, 418.)

In the instant case, defendants raised section 855.6 immunity as the basis for their demurrer and the superior court sustained the demurrer on that ground. On appeal, Jenkins suggests section 855.6 cannot "be used to escape allegations of discriminatory employment practices or to escape statutory provisions of FEHA" because (1) "the

immunity statute is closely related to a claim that could arise under FEHA"; (2) "FEHA is the more specific of the two statutes"; and (3) "FEHA is the newer enacted statute."

" 'In ascertaining the meaning of a statute, we look to the intent of the Legislature as expressed by the actual words of the statute' [citation], 'giving them a plain and commonsense meaning' [citation]." (*California State University, Fresno Assn., Inc. v. County of Fresno*, *supra*, 9 Cal.App.5th at p. 266.) " 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' [Citation.] 'When statutory language is clear and unambiguous there is no need for construction, and we will not indulge in it.' [Citations.] 'We will not speculate that the Legislature meant something other than what it said. Nor will we rewrite a statute to posit an unexpressed intent.' [Citations.]" (*Ibid.*) "When two statutes touch upon a common subject, they are to be construed in reference to each other, so as to 'harmonize the two in such a way that no part of either becomes surplusage.' [Citations.]" (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 778–779; see *Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2009) 173 Cal.App.4th 13, 22 [" 'One "elementary rule" of statutory construction is that statutes in pari materia—that is, statutes relating to the same subject matter—should be construed together. . . . The rule of in pari materia is a corollary of the principle that the goal of statutory construction is to determine legislative intent.' "].)

Section 855.6, which was enacted in 1963 as part of the Government Claims Act (§ 810 et seq., added by Stats. 1963, ch. 1681, § 1) and has not been amended since, reads:

> "Except for an examination or diagnosis for the purpose of treatment, neither a public entity nor a public employee acting within the scope of his employment is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination, of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a

hazard to the health or safety of himself or others."[4]  (Accord, *Creason v. Department of Health Services* (1998) 18 Cal.4th 623, 635–636 (*Creason*).)

Section 855.6 "grants an immunity for failure to perform adequately public health examinations, such as public tuberculosis examinations, physical examinations to determine the qualifications of boxers and other athletes, and eye examinations for vehicle operator applicants." (Cal. Law Revision Com. com., 32 West's Ann. Gov. Code (2012 ed.) foll. § 855.6, p. 285; accord, *Creason*, *supra*, 18 Cal.4th at p. 636.)  It sets forth a single exception:  any "examination or diagnosis for the purpose of treatment" falls outside its ambit.  (See Cal. Law Revision Com. com., 32 West's Ann. Gov. Code, *supra*, foll. § 855.6, p. 285 [§ 855.6 "does not apply to examinations for the purpose of treatment such as are made in doctors' offices and public hospitals.  In those situations, the ordinary rules of liability would apply."].)  No other exceptions are enumerated.  (Cf. §§ 815.2, subd. (b), 820.2 ["[e]xcept as otherwise provided by statute"].)  Thus, nothing in section 855.6's language details a loophole for FEHA causes of action.  (See *Bitner v. Department of Corrections & Rehabilitation* (2023) 87 Cal.App.5th 1048, 1058 (*Bitner*) [plain meaning of § 844.6 granting immunity to public entities for injuries proximately caused by prisoners does not "suggest that an exception should be read into the statute for claims brought pursuant to FEHA"].)

FEHA, which was originally enacted in 1980 (Stats. 1980, ch. 992, § 4), "generally prohibits employment discrimination by both public and private 'employer[s]' and provides civil remedies when its provisions are violated." (*Caldwell*, *supra*, 10

---

**4** Neither section 855.6 nor the Government Claims Act explicitly defines "physical or mental examination." (Accord, *Cleveland v. Taft Union High School Dist.* (2022) 76 Cal.App.5th 776, 806 (*Cleveland*).)  In an earlier case, we held this phrase is limited to "the process of inspecting visually or by use of the other senses the physical, emotional and mental state of the person in question." (*Id.* at p. 809.)  While "this inspection would [typically] involve a face-to-face meeting between the public employee and the individual in question" (*ibid.*), "the inspection also could include interviews by telephone or videoconference" (*ibid.*).

Cal.4th at p. 986; accord, *Esparza*, *supra*, 224 Cal.App.4th at p. 461.) In particular, under section 12940, subdivision (a), "[i]t is an unlawful employment practice" "[f]or an employer" "to refuse to hire or employ [a] person" "because of" "physical disability." "We presume that the Legislature, when enacting [FEHA], was aware of existing related laws and intended to maintain a consistent body of rules." (*Stone Street Capital, LLC v. California State Lottery Com.* (2008) 165 Cal.App.4th 109, 118.) Consequently, it is telling FEHA does not directly address section 855.6 or otherwise suggest immunity thereunder is inapplicable. (Cf. *Towery*, *supra*, 14 Cal.App.5th at p. 234 [Bane Act (Civ. Code, § 52.1) "does not address the immunity established by section 844.6" and "[n]othing in [the Bane Act] indicates an intent to abrogate this specific immunity provision"].) The plain meaning demonstrates the Legislature never intended for FEHA to override section 855.6 immunity. (See *Creason*, *supra*, 18 Cal.4th at p. 635 ["If a specific immunity statute applies, it 'cannot be abrogated by a statute which simply imposes a general legal duty or liability . . . .' "]; *Towery*, *supra*, 14 Cal.App.5th at p. 232 ["[A] statute of general application that merely creates a liability applicable to public entities is not sufficient to override a specific immunity provision."].)[5]

---

[5] Since we find the statutory language of section 855.6 and FEHA unambiguous, we are not obligated to consider extrinsic sources such as public policy. (*Bitner*, *supra*, 87 Cal.App.5th at p. 1064.) Even so, we point out the application of section 855.6 to FEHA causes of action advances significant policies. "First, without the immunity, public entities would be dissuaded from undertaking the examinations due to fear that liability might be imposed if an examination is inadequately performed. The immunity removes this fear of liability and, thus, encourages examinations that otherwise would not be performed, which benefits society in general." (*Cleveland*, *supra*, 76 Cal.App.5th at p. 808; accord, *Creason*, *supra*, 18 Cal.4th at p. 637.) "Second, public institutions have a high volume of persons in need of services and imposing liability would divert resources and exacerbate the institutions' difficulties in serving the public. Thus, it is reasonable to hold public institutions immune while subjecting private institutions to liability because, in theory, those private entities are able to spread the cost of liability across their customer base." (*Cleveland*, *supra*, at p. 808.)

Citing cases such as *Caldwell*, *supra*, 10 Cal.4th 972 and *DeJung v. Superior Court* (2008) 169 Cal.App.4th 533 (*DeJung*), Jenkins argues "public entities as employers are subject to liability under FEHA and are not afforded an immunity . . . ." Those cases are inapposite because they concerned discretionary immunity for public employees under sections 820.2 and derivative immunity for public employers under section 815.2, subdivision (b).[6]  (See *Caldwell*, *supra*, at pp. 980–989 & fn. 9; *DeJung*, *supra*, at pp. 543–548.)[7]  Whereas section 820.2 states "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused," section 815.2, subdivision (b) "simply applies principles of vicarious entity liability" (*Caldwell*, *supra*, at p. 989, fn. 9, italics omitted) and "establishes the premise that if the directly liable employee himself cannot be sued, the doctrine of respondeat superior should not apply against the entity" (*ibid.*).  (See § 815.2, subd. (b) ["Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."].)  FEHA—enacted nearly two decades after sections 815.2 and 820.2— "expressly makes public employers, like private employers, *directly liable* for violations of that law . . . ." (*DeJung*, *supra*, at p. 545, italics added; see *Caldwell*, *supra*, at p. 989, fn. 9 ["FEHA creates *direct* statutory rights, obligations, and remedies between a covered 'employer,' private or public, and those persons it considers or hires for employment."].)  Under section 12926, subdivision (d), an "employer" includes "the state or any political or civil subdivision of the state . . . ."  Therefore, FEHA's statutory definition of

---

[6] These sections were also enacted in 1963 as part of the Government Claims Act (§ 810 et seq., added by Stats. 1963, ch. 1681, § 1) and have not been amended since.

[7] *Caldwell*'s treatment of section 815.2, subdivision (b) is dictum.  (See *Caldwell*, *supra*, 10 Cal.4th at p. 989, fn. 9 ["In any event, the issue of entity immunity is not before us in this case, and we do not decide it."].)

"employer" "constitutes an express declaration of the Legislature's intent to subject public entities to liability for violations of FEHA, and is a 'clear indication of legislative intent that immunity [under sections 820.2 and 815.2, subdivision (b)] be withdrawn in the particular case.' [Citation.]" (*DeJung*, *supra*, at p. 546; see *Caldwell*, *supra*, at p. 989, fn. 9 ["FEHA thus provides a basis of direct entity liability independent of the derivative liabilities addressed in section 815.2."].) By contrast, the language of section 855.6 unambiguously confers direct public entity immunity. Moreover, unlike section 855.6, section 815.2 "contains an express exception for situations governed by other statutes." (*DeJung*, *supra*, at p. 546; see *Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1014, fn. 12 [FEHA " 'otherwise provid[ing]' for direct entity liability"].) To the extent Jenkins suggests governmental immunity can never be invoked in a FEHA lawsuit, we reject the notion. (See, e.g., *Esparza*, *supra*, 224 Cal.App.4th at pp. 459–460 [legislative immunity granted to public entities under § 818.2 bars FEHA claims].)

Having reconciled section 855.6 and FEHA, the question of whether "FEHA is the more specific of the two statutes" becomes immaterial. (See *Shrewsbury Management, Inc. v. Superior Court* (2019) 32 Cal.App.5th 1213, 1227 ["The principle that a specific statute controls over a more general statute is applicable only when the two statutes cannot be reconciled."].) Even if relevant, we believe section 855.6 is more specific. "It is well settled . . . that a general provision is controlled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates." (*Rose v. State of California* (1942) 19 Cal.2d 713, 723–724.) "This principle applies whether the specific provision was passed before or after the general enactment." (*Miller v. Superior Court* (1999) 21 Cal.4th 883, 895; see *Bitner*, *supra*, 87 Cal.App.5th at p. 1061 [" '[T]he rule that specific provisions take precedence

10.

over more general ones trumps the rule that later-enacted statutes have precedence.' "].) Whereas "FEHA is an extensive statutory scheme intended to implement the broad public policy of protecting against discrimination in the employment context" (*Bitner*, at p. 1060), the exact language of section 855.6 "relates only to failure to make any [public health] examination or, if an examination is made, to the 'adequacy' of the examination" (Cal. Law Revision Com. com., 32 West's Ann. Gov. Code, *supra*, foll. § 855.6, p. 285). (See *Smith v. County of Kern* (1993) 20 Cal.App.4th 1826, 1833–1834 [" '[I]t seems clear [section 855.6] immunity does not apply to medical examinations made in a doctor's office or public hospital for the purpose of treatment, . . . In short it is not a blanket immunity from medical malpractice liability. Nor does it apply to a laboratory analysis of a substance suspected to be toxic and the cause of illness.' "].) In other words, FEHA's subject matter is far broader and more generally applicable than the subject matter addressed in section 855.6. (See *Bitner*, *supra*, at p. 1060 [similar conclusion regarding § 844.6].)

Although Jenkins did not raise any causes of action under the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) (ADA) in the operative complaint, he contends—for the first time on appeal—section 855.6 "is subject to Conflict pre-emption, as the [immunity] is pre-empted as much as it is in conflict with the ADA." (See *ReadyLink Healthcare, Inc. v. Jones* (2012) 210 Cal.App.4th 1166, 1175 [party may raise federal preemption for the first time on appeal].) This claim lacks merit. "A conflict exists where compliance with both state and federal law is impossible, or where a state law ' "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ' [Citations.]" (*Spielholz v. Superior Court* (2001) 86 Cal.App.4th 1366, 1371.) FEHA and the ADA "share the goal of eliminating discrimination" (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 56–57) and "prohibit covered employers from discriminating against employees on the basis of a physical or mental disability" (*Kirbyson v. Tesoro Refining and Marketing Co.* (N.D.Cal.

11.

2011) 795 F.Supp.2d 930, 941–942, citing 42 U.S.C. § 12101 et seq.; § 12900 et seq.). In fact, "[our] Legislature intended to provide plaintiffs with *broader* substantive protection under . . . FEHA . . . ." (*Green v. State of California* (2007) 42 Cal.4th 254, 265, italics added; see § 12926.1, subd. (a) ["The law of this state in the area of disabilities provides protections independent from those in the federal [ADA]. Although the federal act provides a floor of protection, this state's law has always, even prior to passage of the federal act, afforded additional protections."]; see also 42 U.S.C. § 12201, subd. (b) ["Nothing in [the ADA] shall be construed to invalidate or limit the remedies, rights, and procedures . . . of any State or political subdivision of any State or jurisdiction that provides greater or equal protection for the rights of individuals with disabilities than are afforded by [the ADA]."].) Given we harmonized section 855.6 and FEHA (see *ante*, at pp. 6–11 & fn. 5), it would be incongruous to deem section 855.6 and the ADA irreconcilable.

      b.  *The demurrer was properly sustained on the basis of section 855.6 immunity.*

According to the operative complaint, as part of the application process for the DOJ special agent opening (see Pen. Code, § 830.1, subd. (b) ["special agents and investigators of the Department of Justice are peace officers"]), Jenkins took and passed a written exam and physical agility test; completed an oral interview; was subjected to a background check and polygraph test; was evaluated by an occupational therapist; and submitted medical records. The medical records were then reviewed by Dr. Hamel, who determined Jenkins was medically disqualified due to a prior back injury. (See § 1031, subd. (f) ["Each class of public officers or employees declared by law to be peace officers shall . . . [¶] . . . [¶] . . . [b]e found to be free from any physical, emotional, or mental condition . . . that might adversely affect the exercise of the powers of a peace officer."]; Cal. Code Regs., tit. 11, § 1954, subd. (a) ["Every peace officer candidate shall be evaluated by a licensed physician . . . to determine if the candidate is free from any physical (i.e., medical) condition that might adversely affect the ability to exercise peace

12.

officer powers . . . . The physician shall conduct the evaluation on behalf of and for the benefit of the employing department."].) Following a successful appeal to the State Personnel Board, Jenkins submitted a second opinion from his primary physician. (See Cal. Code Regs., tit. 11, § 1954, subd. (f)(1) ["A candidate who is found medically unsuitable has the right to submit an independent evaluation for consideration before a final determination of disqualification is made . . . ."].) Thereafter, Dr. Zielinski reviewed Jenkins's medical records and rendered a disqualification finding because of " 'an absolute risk of greater than 1% that Mr. Jenkins could sustain further injury to his back' " " 'resulting in an incapacitation' " (boldface omitted). (See § 1031, subd. (f); Cal. Code Regs., tit. 11, § 1954, subd. (a).) Neither Dr. Hamel nor Dr. Zielinski examined Jenkins in person. (See Cal. Code Regs., tit. 11, § 1954, subd. (d) [identifying only "Job Information," "Medical History Statement" (some capitalization omitted), and "Medical Records" as "Required Sources of Information for the Medical Evaluation"].) Jenkins sued on the grounds he "was discriminated against due to a past medical condition and disability."

Jenkins argued DOJ's decision not to hire him constituted disability discrimination in violation of FEHA because it was based on medical disqualification findings that did not incorporate any in-person physical examinations. This situation falls within the ambit of section 855.6. (See *Kravitz v. State of California* (1970) 8 Cal.App.3d 301, 306–307 [§ 855.6 immunity would apply where "as the result of a faulty diagnosis, a mentally defective person is either not placed in custody or is released therefrom and therefore causes harm to another or to himself"].) Furthermore, Drs. Hamel and Zielinski, each acting within the scope of his or her employment, were "tasked with making a discrete determination about [Jenkins]'s [physical] health" (*Collins v. County of San Diego* (2021) 60 Cal.App.5th 1035, 1062–1063), not with "determining [his] need for medical treatment" (*id.* at p. 1061, fn. omitted). (See *Colome v. State Athletic Com.* (1996) 47 Cal.App.4th 1444, 1458 ["undisputed" purpose of neurological examination "was to

13.

determine the fitness of [the plaintiff] to be licensed" as a boxer and was not "for the purpose of treatment"].)

On appeal, Jenkins posits "if [section 855.6] immunity applies, it should only apply to the physical examination or lack thereof, and not the actions that were done afterwards with the information." This stance ignores the unequivocal language of section 855.6, which immunizes public entities and public employees from liability "for injury *caused by* the failure to make a physical or mental examination, or to make an adequate physical or mental examination . . . ." (Italics added.) Absent Dr. Zielinski's evaluation, there would have been no disqualification finding informing DOJ's decision not to hire Jenkins. Because this evaluation was the catalyst for the injury, section 855.6 came into play. (See *Kravitz v. State of California*, *supra*, 8 Cal.App.3d at pp. 306–307.) The superior court properly sustained the demurrer.[8]

## DISPOSITION

The judgment of dismissal is affirmed. Costs on appeal are awarded to defendants and respondents Department of Justice and Department of the California Highway Patrol.

DETJEN, Acting P. J.

WE CONCUR:

PEÑA, J.

SMITH, J.

---

[8] Having decided the demurrer was properly sustained on the basis of section 855.6 immunity, we need not address other grounds for demurrer. (*Padilla v. City of San Jose* (2022) 78 Cal.App.5th 1073, 1080.)

14.